SUBURBAN SERVICE BUS COMPANY, RESPONDENT, v. THE NATIONAL MUTUAL CASUALTY COMPANY, APPELLANT.—183 S. W. (2d) 376.

St. Louis Court of Appeals. Opinion filed November 14, 1944.

Respondent's motion for rehearing overruled December 5, 1944.

*Joseph N. Hassett* and *Ernest E. Baker* for appellant.

*Edwin A. Smith* for respondent.

SUTTON, C.—This is an action on a liability insurance policy issued to plaintiff by defendant, covering on a bus owned by plaintiff and used in transporting school children, whereby defendant agrees with the insured to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability im-

posed upon him by law for damages because of bodily injury sustained by any person or persons, caused by accident and arising out of the ownership, maintenance, or use of the bus.

The trial, with a jury, resulted in a verdict in favor of plaintiff for $1753.70 for loss sustained and $69.45 as interest, $182.32 for damages for vexatious refusal to pay the loss, and $500 for attorney's fees, aggregating $2505.47. Judgment was given accordingly, and defendant appeals.

Defendant assigns error here for the refusal of its instruction in the nature of a demurrer to the evidence. The assignment is put on the ground that the injury did not arise out of the ownership, maintenance, or use of the bus, and is therefore not within the coverage of the policy.

It is undisputed that a judgment for $1400 was obtained by Mary Honor Killoren against the Suburban Service Bus Company as damages for injury to her while a passenger on the bus, and for $53 as costs; that the Bus Company paid $1453 in satisfaction of said judgment, and also paid $200 to its attorney for services in said suit, and $100 to the parents of Mary Honor Killoren, in settlement of their claim for damages.

Mary Honor Killoren was injured on April 21, 1941, while riding as a passenger in the insured bus. The Bus Company had established routes to the Ursuline Academy, in Kirkwood, St. Louis County, taking school girls to and from school. The bus in which Mary Honor Killoren was riding when she was injured was transporting school children from the school to their homes. Daniel Brummel was driving the bus.

Mr. Roessel, a representative of defendant National Mutual Casualty Company, interviewed Daniel Brummel a few days after the accident occurred. He took a statement from Mr. Brummel, which was reduced to writing and signed by him. The statement, which was introduced in evidence without objection, contains the following: "For the past several days prior to this accident a couple of girls who ride my bus, which is on the Ursuline Convent run, have been using water guns to squirt each other and myself and I have warned them several times. On Monday, April 21, 1941, I had left the school to take the children home. I had been driving about twenty minutes and twice in that time I had told these girls to stop using these water guns as I was afraid I might lose control of the bus and cause a serious accident. However, they did not do so and frequently these jets of water struck me. I stopped the bus and took the fire-extinguisher, intending to scare them. I did not realize by lifting the fire extinguisher and turning it up that it would start to operate. My intent was only to scare them into behaving. However, it started to operate and some of the liquid struck a girl in the face. I believe some more got on the dress of another girl. I took Mary Honor Killoren

to Dr. D.. S. Werth, 124 E. Adams in Kirkwood, who treated her eyes and then I took her home. I paid this doctor $2 for the treatment.''

Le Roy A. Waring testified that he was the secretary and treasurer of the Bus Company, and was very active in the management of the company; that he was present when Mr. Roessel came out and interviewed Mr. Brummel; that Mr. Brummel told Mr. Roessel that the bus had been stopped and was standing still at the time' of the accident; that Mr. Brummel had taken a fire extinguisher for the purpose of scaring the girls on the bus; that the girls had been shooting or using water guns or something on him, and he took down the fire extinguisher so as to stop them, to scare them into it; that Mr. Brummel stated that some of the liquid out of the fire extinguisher struck one of the girls while he still had it in his hands; that Mr. Brummel made a very lengthy statement to Mr. Roessel; that he stated that he picked the girls up at Ursuline Academy; that he had driven from fifteen to twenty minutes from the Ursuline Academy when the girls had been shooting their water guns, squiritng water on themselves, on him, and on the windshield; that it got to such a point at that place that he stopped and pulled up alongside the road, because, in view of the safe operation of the bus, he was afraid he would cause an accident, and he got the fire extinguisher and pointed it back in an effort to scare the girls, and as he pulled the plunger backwards —he said he did not know the fluid would come out as he pulled it back; that the fire extinguisher works both ways, and the fluid came out and squirted on Mary Honor Killoren, one of the girls who did not have a water gun; that some of the fluid hit her in the eyes and got on her dress; that he immediately took her to a doctor in Kirkwood. The witness further testified that the statement was not written down at the time it was given but was typed up and Mr. Brummel signed it; that a copy of the statement was subsequently sent to the Bus Company at its request.

Defendant, after having received Mr. Brummel's statement, denied liability under the policy on the ground that the injury did not arise out of the ownership, maintenance, or use of the bus, and was therefore not within the coverage of the policy.

We think the injury to Mary Honor Killoren while a passenger in the insured bus was an injury arising out of the use of the bus within the meaning of the policy. What the driver did for the prevention of disorderly conduct on the part of any of the passengers, causing interference with the safe operation of the bus, or disturbance or annoyance of other passengers, was regulatory in character, and incident to the use of the bus in transporting the passengers. The policy, by its terms, does not require that the injury was directly and proximately caused by the use of the bus, or caused by the bus itself, or that the injury occurred while the bus was in motion or

operation. The policy insures against liability for injury arising out of the use of the bus. The words "arising out of the use of the bus" are very broad, general, and comprehensive terms. The insurer made no attempt to limit the plain, usual, and ordinary meaning of the term "use". We find nothing in the policy requiring that the use of the bus shall be the direct and proximate cause of the injury. The words "arising out of the use of the bus" are much broader than words such as "directly and proximately caused by the use of the bus." So it was held in the recent case of Smith v. Utilities Ins. Co. (Mo.), 182 S. W. (2d) 181. Though the facts in that case are quite different from the facts in this case, the principle there stated is applicable and we think decisive here.

Defendant assigns error for the giving of plaintiff's instruction submitting to the jury the issue of vexatious refusal to pay the loss under the provision of Section 6040, Revised Statutes 1939, Missouri Revised Statutes Annotated. We are of the opinion that the insured was not entitled to go to the jury on that issue. There can be no question that there was a fairly debatable issue of law on the merits for the decision of the court, not previously decided by any of the courts of this State, nor of any other State so far as we are advised, that is, as to whether or not the injury for which the bus company became liable was an injury arising out of the use of the bus, within the meaning of the policy. There is no evidence of bad faith on the part of defendant in refusing to pay the loss. After the injury occurred defendant promptly investigated the facts and promptly denied liability on the ground that the injury was not within the coverage of the policy because not arising out of the ownership, maintenance, or use of the bus, and consistently adhered to this theory subsequent to such investigation.

Section 6040 is highly penal in its nature and must be strictly construed. The section is not to be invoked to intimidate a good-faith defense. The right of an insurer to resist payment of a claim or loss under its policy is not to be determined under the facts as found by the jury, but must be determined by the facts as they reasonably appear to the insurer before the trial. It has the right to refuse payment and to defend a suit with all the weapons at its command so long as it has reasonable ground to believe its defense is meritorious. Vexatious refusal to pay contemplated by the statute is not to be deduced from the mere fact that the verdict went against the insurer. The insurer is allowed to entertain an honest difference of opinion as to its liability. Where there is no evidence that the insurer's refusal to pay was not made in good faith and the insurer was warranted in contesting liability, the insurer is not subject to the statutory penalty. [Schaeffer v. Northern Assur. Co. (Mo. App.), 177 S. W. (2d) 688, l. c. 693; Schaeffer v. Northern Assur. Co. (Mo. App.), 179 S. W. (2d) 923.]

1134

It follows that the court erred in submitting to the jury the issue of vexatious refusal to pay the loss. The error, however, may be cured by *remittitur*. [Schaeffer v. Northern Assur. Co. (Mo. App.), 179 S. W. (2d) 923, l. c. 926.]

The Commissioner recommends that if plaintiff will within thirty days remit the sum of $682.32, the judgment of the circuit court will be reversed and the cause remanded with directions that a new judgment be entered in favor of plaintiff and against defendant in the sum of $1823.15, with interest thereon at the rate of six per cent per annum from September 21, 1943, the date of the original judgment; that otherwise the judgment be reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions as recommended by the Commissioner, provided plaintiff enters a *remittitur* of $682.32 within thirty days; otherwise the judgment is reversed and the cause remanded for a new trial. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.