246 S.W.2d 349 (1952)
SCOTT
v.
MISSOURI INS. CO.
No. 28350.
St. Louis Court of Appeals, Missouri.
February 19, 1952.
As Modified on Denial of Rehearing March 14, 1952.
*350 Jones, Hocker, Gladney & Grand, and James C. Jones, Jr., all of St. Louis, for appellant.
Henry D. Espy, of St. Louis, for respondent.
HOLMAN, Special Judge.
Action by plaintiff (respondent) to recover upon an industrial insurance policy for $500 admittedly issued by defendant (appellant) on the life of Gertrude Watts and in which the plaintiff, daughter of insured, is named as beneficiary.
The case has a rather extended history. Originating in Magistrate Court it came to the Circuit Court upon appeal by defendant after an adverse judgment. A trial there resulted in a judgment for plaintiff in the sum of $499.44. This court, upon defendant's appeal from that judgment, decided that the cause should be reversed and remanded for a new trial on account of error in giving certain instructions at the request of plaintiff. Scott v. Missouri Insurance Company, Mo.App., 222 S.W.2d 549. Defendant, not being satisfied with a partial victory, sought and obtained a transfer to the Supreme Court because of rulings adverse to it upon other assignments of error. That court, in due time, issued its opinion holding that the instructions were erroneous and further ruled that a certain investigation report, hereafter discussed, should have been admitted in evidence when offered by the defendant and the cause was reversed and remanded for a new trial. Scott v. Missouri Insurance Company, 361 Mo. 51, 233 S.W.2d 660.
Upon a re-trial of the cause plaintiff obtained a verdict and judgment in the aggregate amount of $1391.50, being a recovery of $592.78 as the amount due, with interest, on the policy, $48.72 damages and $750 attorney *351 fees for the vexations refusal of defendant to pay said loss.
Plaintiff's petition was in conventional form, alleging issuance of the policy on July 21, 1947, the subsequent death of the insured on December 7, 1947, and the vexatious refusal of the defendant to pay the amount due the beneficiary. The defense was based on (1) a good health provision of the policy; (2) that in her application the insured knowingly made false representations that she had never been treated for heart disease and had not received any medical attention during the preceding five years and (3) that after the death of insured the controversy between plaintiff and defendant as to defendant's liability was settled for the sum of $12.76, in consideration for the payment of which plaintiff signed and delivered to defendant a release of all claims under the policy. Plaintiff's reply to defendant's answer was a general denial.
The policy contained a provision that it should not take effect if the insured die before the date thereof, or if on such date the insured was not in good health, but in either event the premiums paid thereon, if any, should be returned.
The application, dated July 10, 1947, and duly signed by insured, contained statements that she had never had heart disease and had received no medical attention in the last five years. It further included the following provision:
"I hereby apply for the above mentioned Policy with the Missouri Insurance Company, St. Louis, Missouri, and declare that the statements recorded above and on the reverse side hereof are true and complete and I agree that any misrepresentation wilfully made shall render the Policy void and that the Policy shall not be binding upon the Company unless upon its date I shall be alive and in sound health."
In addition to the application defendant offered in evidence a certified copy of the certificate of death, which recited that the immediate cause of insured's death was "chronic myocarditis, chronic aortitis;" the premium receipt book showing that premiums totaling $11.76 had been paid on the policy; the release pleaded as a defense, and plaintiff's signed statement, dated December 12, 1947, in which she purports to state that her mother was ill of indigestion in February, 1947, and was treated by Dr. Clark and in June thereafter was treated by Dr. Schucat for high blood pressure.
It appears that after plaintiff made claim for the proceeds of the policy the defendant ordered and received an inspection report from the Retail Credit Company. This report, dated December 15, 1947, sets forth that Gertrude Watts died suddenly on December 7, 1947, of chronic myocarditis and aortitis, and that for over a year she had suffered from hypertension and had been treated for same by Dr. William Clark and Dr. James W. Wilkerson, who had reported that she had a blood pressure of 200/100; that Alice Scott (plaintiff) had been interviewed and stated that her mother had several prior attacks which she described as indigestion, but that the doctors had never diagnosed her illness as a heart condition, but both Dr. Clark and Dr. Schucat had advised insured that she had high blood pressure. The written statement of plaintiff heretofore referred to was copied into the report. The report further disclosed that records at the hospital where insured died indicated that she had given a history of being treated for high blood pressure since the past summer and had been complaining of shortness of breath, headaches and dizziness during the past several months. The report gave information that Dr. Clark had treated insured three times in February of 1947 for la grippe at which time her blood pressure was 200/100, and had treated her in June of said year for injuries sustained in a fall. Dr. Wilkerson was reported as stating that he had known insured 10 to 15 years, had treated her about a year before for high blood pressure and gastritis, and Dr. Schucat indicated that in the spring of 1947 Mrs. Watts had a blood pressure of 200/100, which he thought was the cause of the chronic myocarditis and aortitis. In the first trial this exhibit was offered, but excluded on the ground that it was hearsay. The Supreme Court at page 665 of 233 S.W.2d in its opinion, supra, in reviewing this assignment of error, held *352 that the report, though hearsay, was admissible "on the issue of whether there was consideration for the release, that is, whether or not there was a genuine good faith dispute as to liability and whether the facts and evidence in defendant's possession would have caused a reasonable person in good faith to believe that there was no liability to plaintiff on the policy." In compliance with this ruling the report was admitted in evidence, without objection, in the trial now under consideration.
Dr. Wilkerson testified for the defendant to the effect that he had known Mrs. Watts for about 20 years; that during the last five years of her life he had treated her 15 or 20 times, generally for gastritis, but that during all of that time she had high blood pressure. The last time he treated her was on the date of her death, but had not seen her for about a year prior thereto; that her heart was enlarged and she had hypertensive heart disease during this five year period; that this condition would lead to chronic myocarditis, and that hypertensive heart disease accompanied by high blood pressure and enlarged heart cannot be cured.
An autopsy was made by Dr. Martin J. Glaser for the coroner's office, who testified that it showed the cause of death was chronic myocarditis and chronic aortitis and that there were many old scars in the heart muscle which would indicate a chronic heart condition.
Defendant's claim manager testified that after plaintiff made her claim he obtained the aforementioned retail credit report and thereafter when plaintiff returned to the office he refunded to her the premiums paid plus $1 and obtained a release. He stated that he may not have mentioned to plaintiff that he was paying her anything in addition to the amount of the premiums.
The testimony of plaintiff was that Dr. Wilkerson attended the insured on the date of her death and that his last previous treatment of her was in June, 1946, for an attack of indigestion; that Dr. Clark had treated the insured for colds. She denied any knowledge that her mother had suffered from high blood pressure or was ever confined to bed by illness and further denied all knowledge of the contents of the statement she signed on December 12, 1947. Her testimony revealed that her mother had been injured in an automobile accident on November 25, 1947, but had been able to work every day thereafter and seemed all right; that on December 8, 1947, she went to the office of the defendant and gave the claim manager, Mr. Suter, the premium receipt book and he told her to sign some papers and he would give her the $500; that she signed the papers and later went back to the office, at which time he told her that the policy was a young policy and all he could give her was $12.76, the premiums paid by her mother; that he paid the money in cash and she signed some papers but did not read them.
Mildred Everett testified for plaintiff that she had been intimately associated with the insured for seven years before her death and had never known her to be ill except with indigestion or colds.
At the outset, defendant contends that the court erred in overruling its motion for judgment in accordance with its motion for a directed verdict, because the evidence shows as a matter of law that at the time of the execution of the release defendant's claim adjuster was acting upon information which established that there was a bona fide dispute as to liability and therefore the release was valid and binding upon the plaintiff.
The policy provided for a return of the premiums paid if the insured was not in good health on the date thereof. The testimony of defendant's claim manager indicates that on the date the release was signed he told plaintiff she was entitled to a return of the premiums. Further, the defendant was required by law to pay the amount of the premiums into court for the benefit of plaintiff before it could assert its defense of misrepresentation. Therefore if defendant only paid plaintiff the amount of the premiums it had received, such was no more than the payment of its conceded liability to her. It appears that defendant paid plaintiff $12.76, but the evidence indicates that the amount was paid and designated as returned *353 premiums and there is nothing specific to show that plaintiff knew she was receiving anything in addition to such premiums. Therefore it would seem that the issue as to whether defendant paid more than its admitted liability and whether the payment purported to be anything in addition to the premiums would be a fact for the determination of the jury. There was no consideration for the alleged settlement if the defendant paid no more than its admitted liability. Fowler v. Missouri Mutual Association, Mo.App., 86 S.W.2d 946; Scott v. Missouri Insurance Company, Mo. Sup., supra.
The defendant at the trial and in its brief herein has contended that the release is binding upon plaintiff if at the time of its execution the defendant was acting upon facts or information which would cause a reasonable person to believe in good faith that a valid defense existed to plaintiff's claim. In this the defendant is in error and has misconceived the theory of the defense of insufficient consideration under these circumstances. The defendant has overlooked the fact that in addition to showing a genuine good faith dispute as to its liability, it must show that the amount paid to plaintiff as a consideration for the release was more than the amount of its admitted liability. It is our further view that if the payment was designated by defendant's claim manager as a return of the premiums and accepted by plaintiff as such, then the fact that the amount may have actually exceeded the premiums by one dollar would not cause the payment to constitute a sufficient consideration for the release. Insofar as it affects the determination of the issue of consideration for the release, the evidence was substantially the same at each trial except that the inspection report was excluded in the first and admitted in the subsequent trial. It appears, however, from the previous opinion of this court, supra, that defendant's claim manager testified in the first trial without objection that he denied liability upon information furnished him in such report.
In its review of the first trial the Supreme Court considered this precise issue and decided that under the evidence it was a proper matter to be submitted to and determined by the jury. This constitutes the law of the case and is binding upon us and determinative of the issue here unless the situation is altered by the admission of the report in evidence and a consideration of its contents.
It should be borne in mind that this report is hearsay. Its value and the weight to be accorded it depend not only upon the ability, veracity and accuracy of the informants, but likewise upon the care and honesty of the investigator in reporting upon the result of his interviews and in the preparation of the document. Without discussing the contents of this report in detail it is our view that the information contained therein would tend to show that defendant had made a reasonable investigation and had ascertained facts which would tend to indicate to a reasonable person, acting in good faith, that insured had died of heart disease of which she was suffering on the date the policy was issued. We need not rule on the issue as to whether this report would, as a matter of law, be sufficient to cause defendant to believe that it was not liable, because such a ruling would not be determinative of the question of consideration for the release. We have already indicated that the other essential element (payment of more than a return of the premiums) must be submitted to the jury and it was therefore proper for the trial court to deny the motion for a directed verdict and the motion for judgment in accordance therewith.
Defendant urges that Instruction No. 1, given at the request of plaintiff, was erroneous because it purports to cover the entire case and directs a verdict for plaintiff without requiring a finding that there was no consideration for the release. Plaintiff's main instruction in the first trial also omitted reference to this issue and it was held erroneous by the Supreme Court, the opinion at page 665 of 233 S.W.2d stating, "Instruction No. 1 purports to cover the entire case and directs a verdict for plaintiff without any reference to the release (admittedly executed) and without requiring the finding *354 of any facts establishing the invalidity of the release. No other instruction given in the case properly submitted or required, as a condition to a verdict for plaintiff, a finding of facts from which it would appear that there was no consideration for the giving of the release. Since no finding of facts showing the absence of consideration for the release was required as a condition precedent to a finding for the plaintiff, the instruction was prejudicially erroneous."
In the trial now under review Defendant's Instruction No. 2 and Plaintiff's Instruction No. 3 submitted the issues concerning the validity of the release and plaintiff contends that since all the instructions are considered together the erroneous omission in Instruction No. 1 was cured by the giving of these other instructions. The quoted portion of the Supreme Court opinion, supra, would seem to be some authority for plaintiff's contention. We must point out, however, that the instruction there under consideration concluded with the phrase "unless you find for the defendant under other instructions".
It is undoubtedly proper to submit an essential issue by specific reference to another instruction and in some cases a general reference is held adequate. The instruction now under consideration contained no reference to other instructions.
It would seem to be the settled law of this state that if an instruction omits one of the necessary elements of plaintiff's case and nevertheless directs a verdict, such error cannot be cured by including the omitted element in other given instructions, but that if the omission relates to an affirmative defense the error is cured by the submission of the defensive matter in another instruction. Foster v. Aetna Life Insurance Company of Hartford, Conn., 352 Mo. 166, 176 S.W.2d 482; Macklin v. Fogel Construction Company, 326 Mo. 38, 31 S. W.2d 14; Arnold v. Brotherhood of Locomotive Firemen and Enginemen, 231 Mo. App. 508, 101 S.W.2d 729; Schreiber v. Central Mutual Insurance Association, Mo. App., 108 S.W.2d 1052; Nelson v. Kansas City Public Service Company, Mo.App., 30 S.W.2d 1044.
It is therefore decisive of the question presented here to determine whether the issue of lack of consideration for the release was an essential element of plaintiff's case or will be regarded as an affirmative defense. The general rule is that release is an affirmative defense and the party who pleads it has the burden of proving its execution. The Schreiber and Nelson cases, supra, hold that the failure of plaintiff's verdict directing instruction to submit issues concerning the release pleaded by defendant and admittedly executed by plaintiff, was cured by another instruction supplying the omission, as it was an affirmative defense. These cases, however, are not controlling here, as the Supreme Court in the Foster case, supra, has disapproved of such rulings in cases where the execution of the release is admitted and has provided an exception to the general rule in the following language appearing at page 485 of 176 S.W.2d, "but release is merely a contract of compromise and settlement and where, as respondent has done here, the execution of a release purporting to rest on a consideration is admitted in the reply, the burden is on the plaintiff to plead and prove some invalidity in the release." The opinion later states that the issue concerning the validity of the release in such cases is an essential element of plaintiff's case. See also Noble v. Missouri Insurance Company, Mo.App., 204 S.W.2d 446.
In the case at bar the plaintiff in her reply denied all allegations in the defendant's answer relating to the release. However, when she testified she readily and unqualifiedly admitted signing the instrument. This is a judicial admission and, under the circumstances existing here, is as binding upon plaintiff as if it had been contained in her reply. Stigers v. City of St. Joseph, Mo.Sup., 166 S.W.2d 523. On rebuttal she testified to the circumstances surrounding its execution and to facts tending to prove lack of consideration therefor.
If proper objection had been made, plaintiff would likely have been precluded from seeking to avoid the release by asserting her defense of insufficient consideration for same, as that defense was not pleaded. *355 However, the case was tried throughout by both parties upon the apparent assumption that this was a proper issue and we shall therefore consider plaintiff's reply as amended to conform to the evidence. RS Mo 1949, § 509.500, V.A.M.S., Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331; Waltermire v. Stuart, Mo.App., 222 S.W.2d 945.
What we have heretofore said will indicate our view that since the release was admittedly executed by plaintiff, the burden was upon her to plead and prove some matter in avoidance, which in this case was want of consideration. This being an element of plaintiff's case we therefore hold that Instruction No. 1 was prejudicially erroneous in failing to require a finding upon this issue or in lieu thereof to have referred the jury to another instruction relating to same.
Defendant complains of the action of the trial court in excluding certain testimony of Dr. Wilkerson. When asked if he had ever told Mrs. Watts that she had hypertensive heart disease he stated that he had. Defendant then sought to bring out the circumstances under which he did so, but an objection was made that such testimony was in violation of the Dead Man's Statute. The court sustained the objection and instructed the jury to disregard the testimony of the witness as to what he had told Mrs. Watts.
Proof that the insured knew she had heart disease prior to the time she signed the application was vital to the defense of misrepresentation. If Dr. Wilkerson told insured of her condition on the date of her death it would have been immaterial. If such information was given her on any other occasion that he had treated insured, it would have been prior to the execution of the application and would have been material and very important to the defense. The ruling of the trial court was error as the statute only prohibits testimony by a party to the contract or cause of action where the other party to same is dead or insane. RSMo 1949, § 491.010, V.A.M.S. As Dr. Wilkerson was not a party to the contract the statute had no application to his testimony.
The ruling of the court prevented a showing of the date the witness advised the insured of her condition and therefore the relevancy of the testimony is not apparent. Since the cause must be reversed and remanded because of other errors it is unnecessary for us to determine whether defendant was required to make an offer of proof in order for this court to rule on the issue as to whether the error was reversible.
Defendant next complains that the court erred in submitting to the jury the question of penalties for defendant's alleged vexatious refusal to pay the claim. RSMo 1949, § 375.420, V.A.M.S., providing for such penalties, is highly penal and must be strictly construed. It is not to be invoked to intimidate a good faith defense. Robinson v. Benefit Association of Railway Employees, Mo.App., 183 S.W.2d 407; Suburban Service Bus Company v. National Mutual Casualty Company, 237 Mo.App. 1128, 183 S.W.2d 376. The law is well settled that the penalty should not be inflicted unless the facts and circumstances surrounding the company's refusal to pay disclose that such refusal was wilful and without reasonable cause, as the facts would have appeared to a reasonable person before the trial. Bouligny v. Metropolitan Life Insurance Company, Mo.App., 179 S. W.2d 109. An insurance company may contest an issue of fact or an open question of law if it has reasonable grounds to believe that it has a meritorious defense and that there is no liability under its policy. The mere fact that the judgment after the trial was adverse to the defendant's contention is not sufficient reason for inflicting such penalties. De Valpine v. New York Life Insurance Company, Mo.App., 131 S.W.2d 349.
In the case at bar there was no evidence of bad faith on the part of the defendant and the proof indicated that defendant had reasonable grounds for advising plaintiff that it could not pay her claim and upon which to later contest the *356 claim and to submit its contentions to a court and jury. We therefore hold that the court erred in submitting to the jury the issue of defendant's alleged vexatious refusal to pay the claim.
Other errors assigned by defendant will not likely occur at another trial and we need not extend this opinion by a consideration of same.
The judgment should be reversed and the cause remanded for a new trial. It is so ordered.
BENNICK, P. J., and ANDERSON, J., concur.