438 S.E.2d 869

**Stephanie JOHNSON and Melinda Davis, Who Sues by Her Friend, Susan Payton, Plaintiffs Below, Appellees,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Defendant Below, Appellant.**

**No. 21659.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Dec. 15, 1993.

John H. Bicknell, Green, Ketchum, Bailey & Tweel, Huntington, for appellee Johnson.

C. Joseph Stevens, Hamlin, for appellee Davis.

R. Carter Elkins, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for appellant.

WORKMAN, Chief Justice:

State Farm Mutual Automobile Insurance Company ("State Farm") appeals from the October 6, 1992, order of the Circuit Court of Wayne County which awarded judgment to the Appellees, Stephanie Johnson and Melinda Davis. At issue in the declaratory judgment action below was whether State Farm owed liability coverage to the Appellees under a policy provision extending coverage for use of a non-owned car. Having reviewed

the record below, we are of the opinion that the limited development of facts regarding the issue of use prevents this Court from resolving the coverage issue. Accordingly, we reverse the decision of the circuit court and remand this case for further factual development concerning the vehicle's use relevant to the issue of coverage.

On May 17, 1991, a pickup truck, driven by Jonathan Lucas and owned by his father, was involved in a one-vehicle accident resulting in the death of both the driver and the individual occupying the passenger seat, Timothy Davis. The Appellees were also passengers in the vehicle, but they were riding in the bed of the pickup truck rather than the cab. The Appellees filed a declaratory judgment action against State Farm, the automobile insurer of Timothy Davis' father, Billy Davis, seeking compensation for the injuries they sustained as a result of the accident.[1] The policy provision through which they sought coverage was a provision extending coverage for the use of a non-owned car by a relative of Billy Davis. In considering the cross motions for summary judgment, the circuit court ruled that Timothy Davis was "using" a non-owned vehicle at the time of the accident within the meaning of his father's policy with State Farm. State Farm appeals from that ruling, seeking to have this Court determine that the circuit court's interpretation of the term "use" was improper.

The specific issue raised below was whether Billy Davis' automobile insurance policy provided coverage for the actions of Timothy Davis while he was a guest passenger in the vehicle driven by Jonathan Lucas under the use of a non-owned car provision. There is no dispute that Timothy Davis, as the son of his father, was an insured under the State Farm policy.[2] There is similarly no dispute regarding the policy's provision of coverage for damages which an insured is liable to pay because of bodily injury to others resulting from the insured's "use" of a "non-owned" automobile. This case involves allegations that both the driver and the passenger occupying the front seat of the vehicle were engaged in drinking alcoholic beverages prior to the accident. Specifically, the complaint alleges that Jonathan Lucas and Timothy Davis were engaged in a "joint venture" to purchase and consume alcoholic beverages which resulted in the intoxication of Jonathan Lucas as well as the resulting accident and injuries sustained by Appellees.

Appellees frame the issue presented as whether the act of substantially encouraging or assisting a vehicle driver's intoxication by a guest passenger constitutes a "use" of the vehicle within the meaning of the automobile insurance policy. They suggest that the law established in *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987), which imposed liability on a passenger in a motor vehicle who substantially encourages or assists a driver's intoxication for a third party's injuries resulting from the driver's alcohol impairment,[3] should be extended to this case. We note at this juncture that because the law announced in *Price* is rooted in negligence

---

1. Also named as defendants in the declaratory judgement action were State Farm Fire & Casualty Company, the issuer of a homeowner's policy to Billy Davis, and Billy Davis in his capacity as administrator of the estate of his son. State Farm Fire & Casualty Company settled with both Appellees and Billy Davis has been dismissed from the action, except to the extent that coverage may be available to Appellees through his automobile insurance policy with State Farm.

In separate actions filed in the Circuit Court of Wayne County, the Appellees also brought suit against the estate of Jonathan S. Lucas, Westfield Insurance Company, Gino's Distributing, Inc., and State Farm General Insurance Company. All of the various civil actions were consolidated for purposes of determining liability and damages, but not for the purpose of determining issues of insurance coverage.

2. The State Farm policy defines an insured for a non-owned car to include: "1. the first *person* named in the declarations; 2. his or her *spouse;* 3. their *relatives;* and 4. any *person* or organization which does not own or hire the *car* but is liable. for its use by one of the above *persons.*"

3. In syllabus point twelve of *Price,* we held that:

A passenger may be found liable for injuries to a third party caused by the intoxication of the driver of the vehicle in which he is riding, if the following conditions are met: (1) the driver was operating his vehicle under the influence of alcohol or drugs which proximately caused the accident resulting in the third party's injuries, and (2) the passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment. 177 W.Va. at 593, 355 S.E.2d at 382.

principles, it is not controlling in a case such as this which involves application and construction of an insurance contract.

Since the term "use" is undefined in the policy at issue, we must examine how the term has been previously construed by this Court and other tribunals. The term "use" is not synonymous with the term "operate;" it is a much broader term. To illustrate, the term "use" has been held to include injuries resulting from a slip and fall incident which occurred during the loading and unloading of a vehicle, *Ohio Casualty Insurance Group v. Robinson,* 127 Mich.App. 138, 338 N.W.2d 898 (1983); action taken by a bus driver to maintain order, *Suburban Service Bus Co. v. National Mutual Casualty Co.,* 237 Mo.App. 1128, 183 S.W.2d 376 (1944); the explosion of a beer bottle due to the hot interior of a vehicle parked in the sun, *Government Employees Insurance Co. v. Batchelder,* 421 So.2d 59 (Fla. Dist. Ct.App.1982); the accidental asphyxiation of a minor child, resulting from the mother's use of the vehicle exhaust to commit suicide, *Classified Insurance Corp. v. Vodinelich,* 354 N.W.2d 63 (Minn.Ct.App.1984); and an attack by a dog on a passenger, *Farmers Insurance Co. v. Till,* 170 Ariz. 429, 825 P.2d 954 (1991); *see generally* cases collected at 12 Mark S. Rhodes, *Couch on Insurance* § 45:64 (2d ed. 1981 & Supp.1993); 6B John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4316 (1979 & Supp.1992).

In *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.,* 154 W.Va. 448, 175 S.E.2d 478 (1970), this Court analyzed the issue of permissive use[4] and noted that " '[i]t is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or another.' " *Id.* at 452, 175 S.E.2d at 481 (quoting *Maryland Cas. Co. v. Marshbank,* 226 F.2d 637, 639

(3rd Cir.1955)); *see also* 6B Appleman, *supra,* § 4316 at 343 ("person clearly could be 'using' an automobile without operating it personally"). Inherent in the concept of "use" is the exercise of control over the vehicle. *See* 12 Couch, *supra,* § 45:64 at 302. The Fourth Circuit Court of Appeals, in applying West Virginia law, ruled that insurance policy provisions regarding liability coverage for "the use of a nonowned automobile, like the standard omnibus clause, should receive a liberal interpretation in favor of the insured to protect not only him, but the general public as well." *State Farm Mut. Auto. Ins. Co. v. United States Fidelity & Guar. Co.,* 490 F.2d 407, 409 (4th Cir.1974).

This Court recently commented in *Baber v. Fortner ex rel. Poe,* 186 W.Va. 413, 412 S.E.2d 814 (1991), that the "phrase 'arising out of the ownership, maintenance or use' in automobile insurance policies has been given a broad interpretation." *Id.* at 416, 412 S.E.2d at 817 (footnote omitted). Although the insurance phrase—"arising out of the ownership, maintenance or use"—is not the specific policy language at issue here, the cases interpreting the "use" term included in that phrase are instructive concerning the term "use" as it pertains to the policy at hand.[5] At issue in *Baber,* was whether an intentional shooting which occurred from within the cab of a stationary pickup truck was an act "arising out of the ownership, maintenance, operation or use" of the vehicle within the meaning of the policy. *Id.* at 417–18, 412 S.E.2d at 817–18. Citing the principle that a causal connection must be established between the use of the vehicle and the injury to invoke coverage under the "arising out of the ... use" clause, and further that the causal connection must be forseeably identifiable with the normal use of the vehicle, we determined in *Baber,* that the intentional shooting from the cab of the pickup

**4.** State Farm argues that the "permissive use" cases cannot be relied on because the issue of "permissive use" presents a unique issue of coverage. While the outcome of a "permissive use" case is certainly controlled by separate principles, how the term "use" is defined in those cases is nonetheless instructional. Given that the term "use" has been recognized as "the general catch-all of the insuring clause, designed and construed to include all proper uses of the

vehicle not falling within one of the previous terms of definition[,]" we do not think it improper to consider how the term has been defined in cases dealing with other types of coverage issues. 6B Appleman, *supra,* § 4316 at 341–42; *accord,* 12 Couch, *supra,* § 45:64 at 300.

**5.** *See supra* note 4.

truck did not constitute an act arising out of the ownership, maintenance, or use of the vehicle. *Id.* at 417–18, 412 S.E.2d at 818–19 (citing *Detroit Auto. Inter–Ins. Exch. v. Higginbotham*, 95 Mich.App. 213, [222], 290 N.W.2d 414, 419 (1980)). This Court reasoned that the shooting was not " 'foreseeably identifiable with the normal use of the vehicle' " and that "[t]he vehicle functioned merely as the situs of a shooting which could easily have occurred elsewhere...." 186 W.Va. at 418, 412 S.E.2d at 819.

 The causal connection principle discussed in *Baber* is equally applicable to insurance provisions pertaining to use of a non-owned vehicle. Accordingly, we hold that to invoke coverage under an insurance policy provision which extends coverage for use of a non-owned vehicle, there must first be established a causal connection between the use of the motor vehicle and the injury. Appellees maintain that Timothy Davis' "use" of the vehicle is based not on his mere occupancy of the vehicle, but on his assistance in the intoxication of Jonathan Lucas. Yet, the record lacks any evidence that Timothy Davis did in fact encourage or assist the alleged intoxication of Jonathan Lucas. As an initial problem then, Appellees failed to establish the alleged linkage between Timothy Davis' guest passenger status in the vehicle and the intoxication of the vehicle's driver. Moreover, because of this failure, Appellees have not demonstrated the necessary causal connection between the use of the vehicle and the Appellees' injuries necessary to obtain summary judgment on the coverage issue.

Although Appellees contend that Timothy Davis and Jonathan Lucas were engaged in a joint venture which resulted in the intoxication of the driver and ultimately their injuries, the record before this Court indicates that the circuit court did not have any evidence before it in proof of these allegations when it ruled on the motions for summary judgment. Other than the bare allegation of a joint venture in the complaint, the only other reference to alcohol consumption is found in a memorandum in support of State Farm General Insurance Company's ("State Farm General's") motion for summary judgment.[6] That memorandum references allegations in the complaint Appellees filed against State Farm General and Gino's Distributing Company as stating that Timothy Davis, then nineteen years of age, purchased a large quantity of beer from the Gino's Pizza Restaurant at West Hamlin, West Virginia on May 16, 1991, the day prior to the accident.

 Before discussing the issue of use, we address the joint venture theory alleged in the complaint. The term "joint venture" was defined in *Price* as "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." Syl. Pt. 2, in part, *Price*, 177 W.Va. at 593, 355 S.E.2d at 382. Because there are no allegations in the complaint pertaining to a business enterprise, we believe that Appellees intended to allege that Jonathan Lucas and Timothy Davis were engaged in a joint enterprise. As discussed in *Price*, the difference between the two concepts is that a joint enterprise, as opposed to a joint venture, does not involve the concept of profit. *Id.* at 595, 355 S.E.2d at 384. We further explained in *Price* that the joint enterprise theory is frequently utilized in auto accident cases "where the negligence of the driver is sought to be imputed to the passenger" to prevent the passenger from recovering from the vehicle's operator. *Id.* After elucidating at length regarding the joint enterprise theory, we concluded in *Price*, however, that: "From the allegations of the complaint, it appears that the passengers and the driver embarked on a common purpose, that of drinking and joy riding [sic]. This, however, would not be the type of endeavor that would give rise to a joint enterprise." 177 W.Va. at 596, 355 S.E.2d at 385. In syllabus

---

**6.** Although this is not the same State Farm who was sued by Appellees in the declaratory judgment action, as explained in note 1, *supra,* State Farm General Insurance Company was a named party in one of the other civil actions which was consolidated for liability purposes, but not for purposes of resolving the issue of coverage.

point seven of *Price*, we held that "[m]ost courts now reject application of the doctrine of joint enterprise to arrangements to travel together for merely social or recreational purposes." *Id.* at 593, 355 S.E.2d at 382.

The circuit court's order denying summary judgment to State Farm and granting judgment to Appellees pursuant to Rule 54(b) [7] of the West Virginia Rules of Civil Procedure states "that the actions of Timothy Wayne Davis constitute use of a non-owned motor vehicle so as to cause the liability coverage of State Farm policy ... to be applicable and to provide coverage for ... the motor vehicle accident of May 17, 1991." Other than referencing the oral arguments of Appellees' counsel on the issue of use, the circuit court provided no guidance for its decision. Because no supporting affidavits, depositions, or any other type of evidence was submitted either in support of or in response to the cross motions for summary judgment, this Court has little, if any, factual record from which to analyze the circuit court's ruling on the issue of use.

In support of their position, Appellees argue that: 1. The shared common purpose of both the driver and the passenger, Timothy Davis, in travelling together and drinking intoxicating beverages constitutes a "use" of the vehicle; and, 2. The requisite causal connection exists between this use of the vehicle and the injuries sustained by the Appellees. Appellees cite the cases of *Wyoming Farm Bureau Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 467 F.2d 990 (10th Cir.1972) and *Valdes v. Smalley*, 303 So.2d 342 (Fla. Dist. Ct.App. 1974), *cert. discharged sub nom. National Ben Franklin Insurance Co. v. Valdes*, 341 So.2d 975 (Fla.1976) in support of their position. In *Wyoming Farm Bureau*, five minors were riding in an automobile drinking vodka from a bottle, and in preparation of returning to the driver's home, one of the passengers threw the liquor bottle from the vehicle, causing eye injuries to a bystander.

On appeal the sole issue was whether the injury arose out of the ownership, maintenance or use of the motor vehicle within the meaning of the State Farm automobile policy. The appellate court upheld the trial court's ruling that coverage was invoked under the driver's automobile policy based on the fact that the driver "counseled and encouraged" the throwing of the bottle. 467 F.2d at 995. The *Wyoming Farm Bureau* case obviously does not aid Appellees' position that the automobile liability insurance of a guest passenger can be reached for damages sustained by a third-party since the driver's automobile insurance was the coverage at issue. Its only relevance to this case is the discussion noting that the causal relationship between the injury and vehicle need not be direct; "that it is sufficiently connected if the act which causes the injury is incident to the use of the vehicle." *Id.* In *Valdes*, the automobile insurers of both the driver and the passenger, who threw a glass beer mug from a moving vehicle which resulted in the death of a teenage boy, were required to provide coverage under the "arising out of the ... use" clauses of their respective liability policies. The court concluded that "the accident originated from and was causally connected with the use of the automobile and that ... [the passenger's] act of throwing a mug was not a remote or mere 'intervening event' bearing no substantial or direct relation to the use of the vehicle." 303 So.2d at 345. Nonetheless, the precedential value of *Valdes* is clearly limited, given the glaring factual distinctions between the instant case and one in which an object is ejected from a moving vehicle.

In the cases cited by State Farm to support its position of non-coverage, there is a marked absence of allegations of negligent conduct on the part of the passenger. *See Evans v. Allstate Insur. Co.*, 194 So.2d 762 (La.App.1967) (guest passenger's occupancy insufficient to invoke use of non-owned vehicle coverage where injuries arose from tire

---

7. Rule 54(b) provides, in pertinent part, that: When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. W.Va.R.Civ.P. 54(b).

blowout); *Dunlap v. Maryland Cas. Co.*, 242 Ark. 533, 414 S.W.2d 397 (1967) (mere presence of guest passenger in vehicle where no averment of joint venture or passenger's exercise of control in operation of car insufficient to permit recovery under guest passenger's automobile liability policy); *see also Blashaski v. Classified Risk Insur. Corp.*, 48 Wis.2d 169, 179 N.W.2d 924 (1970) (individual who furnished both liquor and his vehicle to minor, but not in vehicle at time of accident, found not to be "using" vehicle within meaning of policy).

The fact that neither party was able to cite to any apposite case law is indicative of how fact-specific these insurance cases are. *See, e.g.*, Larry D. Scheafer, Annotation, *Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R. 4th 10 (1982 & Supp.1993). When presented with determining whether an act came within the "arising out of the use" clause of an automobile liability insurance policy, one court noted in frustration,

> The experience of assimilating divergent fact situations into the basic legal construction given such insuring agreements has produced an array of peripheral principles which are frequently relied upon for determining the existence or nonexistence of coverage under automobile liability insurance policies.... The parties on appeal have indiscriminately cited a number of cases reflecting these peripheral principles, with virtually no attention given to distinguishing them factually. At best, they are of nebulous value absent being conceptually categorized. An attempt to do so reveals that this court is writing on a clean slate insofar as Missouri case law is concerned.

*Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 15 (Mo.App.1980) (discussing vehicle-gun discharge cases). Like the Missouri court, were we to rule on the coverage issue today, we would be starting from a "clean slate" based on the lack of apposite precedent. *See id.*

■ The dearth of factual development in this case severely circumscribes this Court's ability to resolve the issues on appeal. Given this sparsity of facts pertaining to the events preceding the accident, we determine that the circuit court similarly did not have before it the relevant information from which to conclude that Timothy Davis was "using" a non-owned vehicle at the time of the accident. Consequently, the circuit court's resulting determination that there was insurance coverage was rendered prematurely. Accordingly, we reverse and remand the decision granting judgment to the Appellees. Upon remand, the critical facts which need to be discovered include the details concerning the alcohol obtainment and consumption by Jonathan Lucas and Timothy Davis. Relevant facts pertaining to the alcohol consumption include the amount imbibed, over what period of time, and the location of the parties during the drinking. During oral argument, counsel for Appellees represented that some of the drinking occurred at a lake. If the majority of the alcohol was consumed at the lake, rather than during the operation of the vehicle, then the causal connection between the alcohol and the vehicle relative to the Appellees' injuries may be weakened. Extremely relevant is the role Timothy Davis played in the alcohol ingestion of the driver, Jonathan Lucas. That is, did he substantially encourage or assist the intoxication of Jonathan Lucas and did these actions occur within the vehicle? After all of these factual issues have been clarified, then the lower court can determine whether as a matter of law, there was the requisite causal connection between the use of the vehicle, assuming a "use" within the policy meaning is determined, and Appellees' injuries.

Based on the foregoing, the decision of the Circuit Court of Wayne County is hereby reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.