Certified questions answered.

504 S.E.2d 434

**ALLSTATE INSURANCE COMPANY,**
Appellee,

v.

**Dorothy SMITH, as Guardian and Next Friend of Sandtana Evans, an infant, Appellant.**

No. 24499.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 18, 1998.

Decided June 22, 1998.

Linda Gay, Brent K. Kesner, Renatha S. Garner, Kesner, Kesner & Bramble, Charleston, for Appellee.

Forman & Crane, Roger Forman, Forman & Crane, Charleston, for Appellant.

MAYNARD, Justice:

The appellant, Dorothy Smith as the next friend and guardian of Sandtana Evans, appeals the January 7, 1997 order of the Circuit Court of Fayette County, West Virginia. The order granted summary judgment to the appellee, Allstate Insurance Company (Allstate), and dismissed Smith's complaint from the court's docket. The appellant argues the circuit court erred in determining the vehicle owner's automobile insurance did not cover Evans' injuries as a result of no permission being granted by the vehicle owner to the negligent driver to operate the vehicle. The appellant also argues the automobile insurance policy extends coverage to resident relatives "using" the vehicle and as the policy does not define "using", the policy is ambiguous and should be construed liberally in favor of coverage. After reviewing the parties' briefs, the record, and all matters submitted before this Court, we find the lower court committed no error. Accordingly, we affirm.

Pamela Sangster resided in a household with her husband, her mother, her father, and her sister, Charlotte Ellison. On the morning of April 27, 1993, after Sangster left for work, Ellison took the keys to Sangster's 1991 Nissan, admittedly without Sangster's permission.[1] Later that day, Ellison gave the Nissan keys to her boyfriend, Kevin David Brock, and allowed him to drive Sangster's car. Sandtana Evans was riding along as a passenger and was injured when Brock, a nineteen-year-old driving without a driver's license, wrecked the Nissan. There is no question that Brock did not have permission to operate the vehicle, indeed, prior to the day of the accident, Sangster did not even know Brock. The vehicle was insured by a personal automobile policy issued by Allstate.

Smith, as next friend and guardian of Evans, initiated this action by filing a personal injury lawsuit against Sangster and Brock in circuit court, alleging the negligence of Sangster and Brock caused Evans' injuries. Allstate intervened in Smith's tort action. The initial segment of the litigation was settled on December 1, 1995 for $20,000.[2] In the

---

1. Both Sangster and Ellison testified in depositions that Ellison did not have permission to use Sangster's vehicle. When Ellison was asked why she drove Sangster's vehicle on that day, she answered, "Oh, because her car is better than mine, and I like it. That's why I took it." Ellison's car was a 1991 Escort.

2. Allstate acknowledged an obligation may exist to provide coverage up to the minimum liability coverage required by the motor vehicle financial responsibility law contained in W.Va.Code § 17D–4–12 (1991), which states in pertinent part:

(b) Such owner's policy of liability insurance:

settlement and release agreement, the parties reserved the right to seek a judicial determination as to whether liability insurance coverage, above the $20,000 settlement, was available under Sangster's policy for Evans' injuries.[3] Allstate filed a declaratory judgment action, asking the court to rule that Evans was not entitled to additional liability insurance coverage under the automobile policy. Following discovery, Allstate moved for summary judgment which was granted by the lower court. It is from this order that Smith appeals.

On appeal, Smith first argues the lower court erred in determining insurance coverage would not be extended to cover Evans' injuries based on the fact that the owner of the vehicle, Pamela Sangster, did not give the negligent driver permission to drive the vehicle. Smith argues W.Va.Code § 33-6-31(a) (1995)[4] must be read and construed liberally to effect coverage and cites *Universal Underwriters Ins. Co. v. Taylor*, 185 W.Va. 606, 408 S.E.2d 358 (1991) as a basis for that principle. Smith states that coverage under the policy relates to using the insured vehicle and "using" is not defined in the insurance policy. She reasons that Ellison was an insured person who was using the

vehicle and her negligence, in allowing Brock to drive the vehicle, caused Evans' injuries. Therefore, coverage must be afforded under Sangster's policy of insurance.

Allstate argues insurance coverage is not available under Sangster's policy of insurance for Evans' injuries because the injuries were not caused by an "insured person" within the meaning of the policy language and West Virginia law.[5] Allstate maintains that the omnibus clause in the insurance policy must comport with W.Va.Code § 17D-4-12(b)(2) and W.Va.Code § 33-6-31(a), which it does. Allstate reasons that West Virginia is an initial permission jurisdiction. Since Ellison did not have permission to operate Sangster's vehicle, Ellison could not subsequently grant permission to a third person to operate the vehicle. Furthermore, Brock was an unlicensed driver. Therefore, there is no liability coverage for Evans' injuries.

We begin by recognizing that "although contracts of insurance are to be liberally construed in favor of the insured, if [the insurance contracts] are plain and clear and not in violation of law or inconsistent with public policy, the courts are bound to adhere to their terms." 10B M.J. *Insurance* § 125

(2) Shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Twenty thousand dollars because of bodily injury to or death of one person in any one accident[.]

3. The limit of liability for bodily injury stated on the declarations page of the insurance policy is $50,000 per person and $100,000 per accident.

4. W.Va.Code § 33-6-31(a) (1995) states in pertinent part:

(a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this state to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the divi-

sion of motor vehicles of this state, unless it shall contain a provision insuring the named insured and any other person, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy, responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his spouse against liability for death or bodily injury sustained or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person: Provided, That in any such automobile liability insurance policy or contract, or endorsement thereto, if coverage resulting from the use of a nonowned automobile is conditioned upon the consent of the owner of such motor vehicle, the word "owner" shall be construed to include the custodian of such nonowned motor vehicles.

5. Allstate acknowledged during oral argument before this Court that if Ellison had been driving the vehicle at the time of the accident, the policy limits would be available for the injuries Evans sustained because Ellison qualifies as a resident relative under the terms of the insurance contract.

(1995). The declaratory judgment action in this case involves the omnibus clause in Sangster's personal automobile policy of insurance that was issued to her by Allstate. The omnibus clause of Sangster's policy defines "insured persons" as follows:

**Insured Persons**

1. While using **your** insured **auto:**

  a) **you,**

  b) any **resident** relative, and

  c) any other licensed driver using it with **your** permission.

Smith argues this language is ambiguous in that it could be read to mean a resident relative who is covered under the policy can grant permission to a third person to operate the vehicle and because the resident relative is covered, the third person is covered. We do not agree.

In *Universal Underwriters Ins. Co. v. Taylor,* 185 W.Va. 606, 408 S.E.2d 358 (1991), this Court determined that West Virginia is an initial permission jurisdiction. The *Taylor* Court commented by stating, "[W]e hereby determine that the state motor vehicle omnibus clause requires an insurer to provide coverage *when permission has been granted by the insured owner* of the vehicle or its authorized agent to a driver who then causes injury or property damage during the permissive use." *Id.* at 612, 408 S.E.2d at 364. (Emphasis added). The Court went on to explain that the exception to providing coverage is activated when the driver does not have permission to use the vehicle. Later, in *Metropolitan Property and Liability Ins. Co. v. Acord,* 195 W.Va. 444, 449, 465 S.E.2d 901, 906 (1995), in discussing whether liability coverage would be extended when an insured other than the named insured gave permission to another to drive the covered vehicle, this Court stated, "W.Va.Code § 33–6–31(a) contemplates that the *named insured* must give express or implied permission to the person utilizing his vehicle." (Emphasis added).

The facts in *Acord* are similar to the facts in the case *sub judice.* Orvil Acord, Jr., a thirty-six year old resident relative of his parents' home, did not have a key to his parents' vehicle. Nor did he have permission to use his parents' vehicle. But, while Mr. Acord was sleeping, his son, Orvil Acord, Jr., took the keys from his father's pants pocket and stole the car. Acord then allowed Scott Stephen Allen to drive the vehicle. The Acords had not given Allen permission to operate their vehicle. While driving, Allen wrecked the vehicle, killing Acord. The Acords' insurer, Metropolitan Property and Liability Insurance Company (Metropolitan), obtained this evidence during the investigation of the accident. Based on the evidence, Metropolitan denied liability coverage for Acord's death. Metropolitan filed a motion for summary judgment, which was granted by the circuit court. The Acords appealed to this Court, arguing the circuit court erred in finding that liability coverage afforded by the Metropolitan policy was not available to them. This Court noted that other jurisdictions interpret omnibus provisions similar to W.Va.Code § 33–6–31(a) to mean that "initial permission given to the driver at issue must have originated from the named insured and not merely any insured under the policy provisions." *Id.* at 449, 465 S.E.2d at 906. The *Acord* Court held that:

> Consistent with the omnibus clause of West Virginia Code § 33–6–31(a) (1992), an insurer may properly deny liability coverage where the express terms of an automobile insurance policy provide that in order for liability coverage to exist, a driver, who is not otherwise insured under the policy, must have received the named insured's permission to use the automobile, and said driver lacked the express or implied permission of the named insured prior to using the vehicle.

Syllabus Point 2, *Acord,* 195 W.Va. at 449, 465 S.E.2d at 906. After discussing the omnibus clause, the Court announced its ruling by stating:

> Because the record so clearly demonstrates that the Appellant's son had not received the Appellant's or his spouse's express or implied permission to use the vehicle, he simply could not have given permission to Mr. Allen to drive the car, sufficient to invoke the liability coverage of the policy. Further, there were absolutely no facts which would support that Mr.

Allen had obtained any type of permission, either express or implied, from the named insured or his spouse. Consequently, it is evident that Mr. Allen was not an insured under the provisions of the Metropolitan policy.

*Acord,* 195 W.Va. at 450, 465 S.E.2d at 907.

■ *Acord* and the case before us now both involve a situation where an insured, other than the named insured under the terms of the policy, gave permission to another to drive the covered automobile. We can therefore apply both the reasoning and the conclusion reached in *Acord.* In fact, we believe the holding in *Acord* would be dispositive of the facts in this case, except that Smith further argues the term "use" as it appears in the insurance policy is ambiguous. Smith argues Ellison was a resident relative who was "using" the vehicle as a passenger at the time of the accident; the policy does not define "use"; other courts have afforded coverage when a firearm accidentally discharged while it was being unloaded from an insured vehicle, *citing State Farm Mut. Auto. Ins. Co. v. Rice,* 239 Va. 646, 391 S.E.2d 71 (1990). Therefore, by analogy coverage should be extended to Evans. We do not agree.

■ This Court spoke regarding the meaning of the word "use" in *Johnson v. State Farm Mut. Auto. Ins. Co.,* 190 W.Va. 526, 529, 438 S.E.2d 869, 872 (1993), by stating, "Inherent in the concept of 'use' is the exercise of control over the vehicle." This Court went on to hold that "[t]o invoke coverage under an insurance policy provision which extends coverage for use of a non-owned vehicle, there must first be established a causal connection between the use of the motor vehicle and the injury." Syllabus Point 1, *Johnson, id.*

In *Johnson,* Jonathan Lucas was driving his father's pickup truck. Timothy Davis was a passenger in the truck. Stephanie Johnson and Melinda Davis were also passengers in the vehicle, but were riding in the bed of the truck rather than in the cab. There was an accident. Both Jonathan Lucas and Timothy Davis were killed. Stephanie Johnson and Melinda Davis sought compensation for injuries they received in the accident from Timothy Davis's father's insurer. The policy provision at issue extended coverage for the use of a non-owned vehicle by a relative of Billy Davis, Timothy Davis's father. Stephanie Johnson and Melinda Davis alleged Timothy Davis substantially encouraged or assisted in the driver's intoxication which constituted a "use" within the meaning of the insurance policy. The circuit court awarded judgment to Stephanie Johnson and Melinda Davis. Billy Davis's insurer, State Farm Mutual Automobile Insurance Company, appealed to this Court, which held that in order to obtain summary judgment, one must demonstrate the causal connection between the use of the vehicle and the injuries complained of. *Johnson* was remanded to the circuit court to determinate whether a causal connection existed between the driver and the passenger as no evidence had been presented to show Timothy Davis encouraged or assisted in the alleged intoxication of Lucas, the driver. Stephanie Johnson and Melinda Davis had therefore not established the necessary linkage between Timothy Davis's guest passenger status and the intoxication of Lucas to obtain summary judgment on the coverage issue.

In commenting on *Johnson,* the federal district court for the Southern District of West Virginia stated in *Riffe v. Magushi,* 859 F.Supp. 220, 226 (S.D.W.Va.1994):

> *Johnson* makes clear that mere occupancy of a vehicle by a passenger does not constitute 'use.' However, the court also noted defining the term 'use' in regard to automobile passengers requires a factual inquiry into the causal connection between the contribution of the passenger to the accident. Mere occupancy by the passenger will not suffice.

As far as we can tell from the record submitted to us in the case at bar, Ellison was merely riding along as a passenger when the accident occurred. No one has contended that Ellison contributed in any way to the accident. Therefore, the requisite connection necessary to constitute "use" within the meaning of the policy does not exist between Ellison and Brock. As a result, the injuries

Evans suffered in the accident are not covered under the insurance policy.

We therefore hold that when language in a personal automobile insurance policy states that a resident relative is insured while "using" the automobile of the insured, mere occupancy as a passenger in the insured vehicle by a resident relative does not constitute "use." A resident relative who was not given initial permission to use the vehicle, but instead took the keys and subsequently took the vehicle, cannot give permission to a third person to drive the vehicle. When that happens and the third person wrecks the vehicle, the driver is not an insured under the provisions of the insurance policy. As a result, the insurer is not responsible for the injuries a fellow passenger receives in the accident.

Based on the foregoing, the decision of the Circuit Court of Fayette County is hereby affirmed.

Affirmed.