THE ADOLPH.

*(District Court, S. D. New York.* February 15, 1881.)

1. SEAMEN'S WAGES—EXTRA WAGES—SWEDISH CODE—VOYAGE ABAN-DONED IN A FOREIGN PORT—MARSHALLING ASSETS—REMITTING SEAMEN TO SUIT IN PERSONAM—MASTER'S LIEN.

The Swedish bark A., being in custody of the marshal under libel for collision, filed in this district by an insurance company, a French corporation, who insured the cargo of the colliding vessel, and an appeal having been taken from the decree dismissing the libel, the owners were informed by the master of the facts, and they instructed him not to bond the vessel, and to look to the vessel for payment of the crew.

The master and seamen thereupon libelled her for wages; a portion of the crew having been discharged on their consent, the master, mate, and two seamen remaining on the vessel till the trial of their suit for wages. The company, as intervenors, oppose the claim of the master and seamen.

*Held,* that the master simply discharged his duty to the owners in keeping the crew during the temporary delay, until definite instructions were received from the owners to abandon the voyage; that the voyage having been broken up in a foreign port, the seamen were entitled to three months' extra wages, under the Code of Sweden, which should begin to run from the time the master received instructions that he was not to be put in funds to pay the crew. As to them, this amounted to an abandonment of the voyage.

*Also held,* that this is not a case for marshalling assets by declining jurisdiction of the seamen's claim for wages, thus remitting them to a suit against the owners in the home port. The admiralty court will not thus exercise its discretion where the remedy suggested is likely to be so delayed that the creditor's relief may thereby be seriously prejudiced; that no equity exists in favor of the intervenors, appellants from the adverse decree of this court, who, being a foreign

corporation, have presumably as complete a remedy against the owner to recover, in the home port, any deficiency that may arise after paying seamen's wages, if their alleged lien shall be finally sustained, as the seamen have to recover their wages there.

*Further held,* that even the master's claim to be paid out of the vessel should, under the circumstances of the case, be sustained as against the intervenors.

In Admiralty.

*George H. Forster,* for libellant.

*W. Mynderse,* for La Fonciere Ins. Co., intervenors.

CHOATE, D. J.   This is a libel by the master and seamen of the Swedish bark Adolph for wages.

The vessel arrived in this port in August, 1880, in ballast, under charter to take on board a cargo of grain for an European port.   On her voyage hither from France she had a collision, and soon after the arrival of the vessel she was libelled in two suits—one by the master of the vessel with which she was in collision, on behalf of himself and the owners; and the other by the insurer on her cargo, to recover damages caused by the collision.   The libel of the master was withdrawn.   The other libellant proceeded, and, the vessel being in custody, the case was brought to trial and a decision was rendered November 10, 1880, dismissing the libel on the ground that the Adolph was not proved to be in fault.   4 FED. REP. 730.   The libellant appealed.   Thereupon the claimant made application for the release of the vessel, or for security against her detention pending the appeal.   This application was denied November 30, 1880. 5 FED. REP. 114.   The master had communications with the owner, who resides at Stockholm, soon after his arrival, and advised the owner of the seizure of the vessel, and thereafter of the subsequent proceedings.   The vessel was appraised at $10,000, and partly because this was thought to be too high a valuation, but principally because, if she was bonded, she would still be liable to seizure in another port by the libellant, who had withdrawn his suit here, the owner determined not to give stipulation for value.   It was not till about the 26th of December that the master was finally advised by the owner that he would furnish no money to pay off the crew, and would not give bonds to release the vessel.   Part of the crew were discharged by their own consent, and took service in other vessels—one on the 11th of November, and three on the 10th of January. There was then due them for wages, to the time of their discharge, $613.85.   The master and second mate and two seamen have remained by the vessel to the present time.

By the maritime code of Sweden the master has a lien on the vessel for his wages, and claims against vessel and freight rank as follows:   (1) Wages of master and crew;   (2) the aver-

age contribution of the vessel, loans on bottomry, claims for cargo sold for the benefit of the vessel; (3) other claims for which the owners are held liable with the vessel and freight; (4) advances or loans which the owners may make for each other. By the same code it is also provided that seamen who are discharged in a port, other than the port of shipment, by the breaking up of the voyage, shall be entitled to extra wages, differing in amount with different parts of the world, but as applied to this case three months' extra wages.

This libel was filed by the master and seamen, January 13, 1881. The libellants discharged November 11th and January 10th claim their wages up to the time of their discharge. The master and seamen are all Swedes, and have their homes in Sweden, although two of those discharged in November and January shipped at ports in France. The insurance company, whose libel against the Adolph was dismissed, and who have appealed from the decree of this court, have appeared to defend this suit. They insist that as the master and seamen have a valid claim *in personam* against the owner in their own country, that they should be remitted to that remedy, and not allowed to absorb for wages a large part of the value of the vessel, which is the only security for their loss which the insurance company have. They also object that the seamen should at any rate not have their wages earned prior to the collision as against the insurance company, on the ground that the lien for damages is superior to that for wages, and that the crew should have been sooner discharged and are not entitled to the extra wages.

As respects the time during which the seamen were retained by the master, I think he was right in keeping his crew. The obstacle to the sailing of the ship was temporary, and he properly waited for definite instructions from the owners; and as he was not instructed to discharge them and abandon the adventure here until the receipt of the letter of the owner of December 13th, and has not been put in funds to pay them off, he has simply discharged his duty to the owner in doing what he has done in respect to keeping the crew. I

see no reason why the seamen should not have the extra wages which the law of their country gives them. A similar point was ruled in favor of the seamen in the case of *The Wexford*, 3 FED. REP. 577. This allowance is a liquidated and certain substitute for the claim which, independently of positive law, the seamen are entitled to when the voyage is broken up in a foreign port. They can claim their wages up to the time when they might be able to arrive at their home port, and the expense of their transportation. *The Elizabeth*, 2 Dods. 410. I think the seamen were bound under the articles for the return voyage of the vessel, and therefore upon their discharge here are entitled to the compensation which the law awards them. As to the claim that upon the equitable principle of the marshalling of assets the court should leave the seamen to pursue their remedies *in personam* in their native country, it is true that the admiralty courts, as courts governed by equitable principles, will marshal assets by compelling in a proper case a party having two funds to resort to, to look to that fund upon which another party having but one of the funds to resort to has no claim, in order that both may be paid. Ordinarily, however, for the application of this rule, the fund to which the party having two funds to look to may thus be compelled to resort should be one affording a remedy as certain as the one he is compelled to relinquish, and the application of the principle should not be made where the remedy to which he is remitted is likely to be so delayed that his relief will thereby be seriously prejudiced. It is not to be forgotten that the claim for marshalling of assets is a merely equitable claim, and it should never be pushed so far as to imperil or impair the substantial rights of the party having a specific lien or legal claim to the fund. It is indeed a matter of discretion whether the court will assume jurisdiction of the claim of foreign seamen; and where justice to other parties requires it, and no injustice appears to be done to the seamen themselves by declining to take the jurisdiction, the court may refuse to act and thus work out the equities of the parties, and leave the seamen to

pursue their remedies at home. But still the claim of seamen for their wages is one most highly favored and carefully protected in the admiralty, and ordinarily the court will not refuse to enforce against the vessel the claims of foreign seamen, where the voyage is broken up in this country, and where, if their claims against the vessel are not enforced here, they will be in danger of losing their hold upon her, or be put to great trouble and expense in pursuing their remedies elsewhere. In the case of the *Linda Flor*, Swabey, 309, Dr. Lushington declined to award the seamen of a Portuguese ship their wages against the vessel where objection was made by a party who obtained a decree against the vessel for damages by a collision. The present case does not present the same equity on the part of the intervening party. This insurance company, instead of having a decree in their favor against the vessel, has a decree against them; and although they have appealed, still in this court they must be held to be a party having no lien and no equity as against the seamen. It is also a French corporation, entitled to sue, indeed, in our courts, but whose interests the court has not the same reasons to protect, upon an application for the marshalling of assets, as in case of a citizen of this country. This foreign company is suing here in a foreign court, and there is nothing to show that it may not have as complete a remedy against the owner in the home port of the vessel, if the liability of the owner shall be established on the appeal, for any deficiency in the satisfaction of its claim by reason of the fund being reduced by payment of the seamen, as the seamen themselves would there have against the owner. The case of *The Orient*, U. S. D. C., S. D. N. Y., November 8, 1879, is cited as sustaining the claim of the insurance company, both in the matter of the marshalling of assets and upon the alleged superiority of the lien for damages by collision to the seamen's lien for their wages prior to the time of the collision. The points here raised are there carefully considered, though the circumstances were somewhat different; but the case does not on either point aid the present claim of the insurance

company. In this case it would be a denial of justice to remit the seamen to their remedy *in personam* against the owner in Sweden. There is no evidence that he is insolvent, but there is also no satisfactory evidence of his pecuniary responsibility. It is not shown that their remedy against him is certain or expeditious, and no equity exists on the part of any other party to induce the court to withhold its aid for their relief. Moreover, the law of their country, under which they shipped, seems to make their lien superior to that for the collision, even if the Adolph was at fault; and both parties being foreigners, and the law of Sweden in this respect being in accordance with what has been held in this court in the case of *The Orient, ut supra*, to be the maritime law, I see no reason why it should not be applied in their favor. While some of the foregoing considerations have not the same force in the case of the master that they have in the case of the rest of the crew, yet even as to the master it must be held, consistently with the decision in the collision suit, that this intervenor has no equitable claim which should be allowed to defeat or delay the payment of the master's wages out of the vessel.

The three months' extra wages should, I think, begin to run from the date of the receipt of the letter of the owner, dated December 13th. From that time the master was instructed to abandon the enterprise, and to look to the ship alone for payment of wages. It was a virtual discharge of the crew, and authorized them to treat the voyage as abandoned by the owner, and to file their libel at once.

Decree for the libellants, with costs.