## THE HOXIE.

### AMERICAN EXPRESS CO., AKTIESELSKAB, v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. March 10, 1924.)

#### No. 2200.

1. Evidence ⬳80(1)—One claiming maritime lien under law of foreign country must prove such law.

   One claiming a maritime lien under the law of a foreign country must prove such law; otherwise, it will be presumed to be the same as the law of the United States.

2. Maritime liens ⬳6—General agent for operator of ship not entitled to lien for disbursements for ship.

   A general agent for a steamship company is not entitled to a maritime lien for advances and disbursements made for one of its ships.

3. Maritime liens ⬳28—One making advances to charterer held not entitled to lien.

   Libelant, which had knowledge of the general terms of contracts between the Shipping Board and contract purchasers or charterers in possession of its vessels, which prohibited them from subjecting the vessels to liens, *held* not entitled to claim a lien as against the Shipping Board for advances made to a contract purchaser or charterer.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit in admiralty by the American Express Company, Aktieselskab, against the United States, as owner of the steamship Hoxie. Decree for respondent, and libelant appeals. Affirmed.

For opinion below, see 291 Fed. 599.

Before WOODS and ROSE, Circuit Judges, and WEBB, District Judge.

J. M. Richardson Lyeth, of New York City (Carter, Ledyard & Milburn, of New York City, Lord & Whip, of Baltimore, Md., Rush

Taggart, Jr., of New York City, and George W. P. Whip, of Baltimore, Md., on the brief), for appellant.

Arthur M. Boal, of Boston, Mass. (A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., on the brief), for the United States.

ROSE, Circuit Judge. In the opinion of the learned judge who heard this case below, and which under the caption of The Hoxie is reported in 291 Fed. 599, nearly all the legally material facts are sufficiently stated. Two questions of much interest and importance have been ably argued before us The first is: Does the creation of a maritime lien for supplies depend upon the law of the port at which they were furnished, as was held in The Scotia (D. C.) 35 Fed. 907, in the Kaiser Wilhelm II (D. C.) 230 Fed. 717, and in the Woudrichem (D. C.) 278 Fed. 568, or upon that of the ship's flag, as was ruled in Pope v. Nickerson, Fed. Cas. No. 11,274, and in The Woodland, Fed. Cas. No. 17,976. The second has to do with the time in which a suit to enforce such a lien must be brought. It turns on whether the provision of the Danish law on the subject is an integral part of the remedy itself, as, for illustration, is the requirement in Lord Campbell's Act that actions under it must be brought within a year, or is it a mere statute of limitations, and as such ineffective in the courts of another jurisdiction.

[1] We do not find it necessary to answer either of them. There is no presumption that the law of foreign countries is unlike ours. One who would rely upon the difference between them must prove its existence. If he does not, we apply our own law to the case. The Scotland, 105 U. S. 24, 29, 26 L. Ed. 1001: Liverpool Steam Navigation Co. v. Phœnix Insurance Co., 129 U. S 397, 406, 9 Sup. Ct. 469, 32 L. Ed. 788. 2 Wharton's Conflict of Laws, § 772 et seq. There is nothing in the evidence of the learned Danish jurist who testified for the libelant to suggest that in his country an agent for the ship has a lien for advances made to pay for necessaries furnished on the order of the master, if the agent at the time he accepted the agency unmistakably manifested his intention to rely upon the contract of the owner or charterer of the ship to pay for them, and not upon the right to hold the ship. There is in this respect no difference between the Danish law and our own, if we rightly understand the opinion of the Supreme Court of Denmark, which he makes part of his deposition. The Board of Directors of the S. S. Ocean v. Coal Trade Association of Rotterdam, Danish Weekly Law Times 1911, pp. 412, 493. If we are right on this point, it is clear the libelant has no case, as we are in full accord with the finding of the learned judge below that the libelant here is a mere agent of the American Express Co. of New York.

[2] It is in evidence that the latter issued a circular to its various European agencies, including the libelant herein, in which it told them that the United States Shipping Board had started to recommend it as agent to handle some of its steamers. It explained how it was arranging "to handle disbursements' on all ships that are given to" it, either by the board or by a steamship line. Then followed directions as to how the agency should figure the approximate amount of money needed to disburse a ship. This estimate it was told to cable to the

American Express Company, so that the latter might collect it from the owner or operator before the ship as much as got into port. If the estimate turned out too small, the agent was to cable for additional funds. If, on the other hand, too much had been collected, the excess would be refunded by the New York Company. No agency fee was to be included in the estimate, because that was collectible in New York from the owner or operator The agent was instructed to advise the American Express Company as early as possible what were the customary commissions in its port for steamship agencies, so that proper collections could be made. It is hard to conceive how the intention of the American Express Company to look for reimbursement to the owner or operator and not to the ship could be more clearly shown. Furthermore, the evidence leaves no room to question that the American Express Company was the general agent for the operator of the Hoxie and its other ship or ships. If so, the American law did not give it a lien upon the ship for its disbursements. The Centaurus (C. C. A.) 291 Fed. 751

[3] There is nothing in the record to suggest that on this point the law of Denmark is in any wise different. Moreover, as the circular to which reference has already been made demonstrates, the American Express Company was to handle the business of the Shipping Board ships. It must have known that the Hoxie belonged to the board, and that the latter forbade charterers and agreed purchasers in possession from it to subject its ships to liens.

In view of these facts, and of its knowledge of the relations between the operators of the Hoxie and the board, it could not, with due respect to the right of the latter, seek to use the law of any country to secure a lien upon the ship for advances it saw fit to make to those in possession of her.

The decree below was right, and must be affirmed.