## THE FORT GAINES.

(District Court, D. Maryland. March 31, 1927.)

No. 1458.

1. Seamen ⊚⟹27(7)—Officers and crew of Norwegian vessel held entitled to extra wages on "dismissal" by seizure and sale of vessel and to a lien therefor.

Under the maritime law of Norway providing that seamen dismissed before termination of the contract unless for excepted reasons, shall be entitled to extra pay for one month, and longer in case of officers, and giving a maritime lien to seamen for wages and other remuneration to which they are lawfully entitled, where a ship is seized under a libel, and services of her officers and crew thereby terminated, they are "dismissed," within the meaning of the statute and entitled to the extra pay provided and a lien therefor.

[Ed. Note.—For other definitions, see. Words and Phrases, First and Second Series, Dismissal.]

2. Evidence ⊚⟹81—Laws of foreign country, not proved, will be assumed same as those of United States.

Laws of foreign country must be proved, or will be presumed same as those of United States.

3. Seamen ⊚⟹27(9)—Seaman's lien for wages and extra pay takes precedence over other claims.

Lien of seamen for wages, including extra pay, takes precedence over. claims of other creditors.

4. Seamen ⊚⟹27(7)—Crew of vessel have no maritime lien for wages earned after seizure on legal process.

There is no maritime lien for wages of the crew of a vessel after she was seized on legal process.

In Admiralty. Suit by L. Frank Stafford and others against the steamship Fort Gaines. On consideration of claims of master and crew to maritime liens. Disposition in accordance with opinion.

Wm. H. Lawrence, George T. Mister, and Brown, Brune, Parker & Carey, all of Baltimore, Md., for libelants.

SOPER, District Judge. On October 5, 1926, a libel was filed for supplies furnished to the steamship Fort Gaines, whereupon the vessel was seized by the United States mar-shal, and kept in his custody until November 8th, when she was sold by order of court. The net proceeds of sale amounted to $9,327.45. Various claims against her for supplies and services, filed by others than the master and crew, amount to something over $12,000. Intervening libels in the aggregate sum of $3,-557.71 for wages, extra pay, and subsistence have been filed by the master, officers, and crew of the vessel. The question before the court is whether the last-mentioned claims give rise to prior liens on the vessel.

[1] The Fort Gaines was a Norwegian vessel. The shipping articles, signed by the seamen, contain the following statement: "That they shall serve on board the vessel in capacity here below stated with the obligation and privileges provided in the Maritime Law of July 20, 1893, and February 16, 1923." The laws referred to are Norwegian laws. It is stipulated that the Act of February 16, 1923, section 34, provides as follows:

"If a seaman is dismissed before the termination of the engagement, without such dismissal being warranted according to section 32 or section 33, he shall be entitled to two months' wages from the date of leaving, provided he is a mate or engineer, or to one month's wages, provided he belongs to the remaining crew."

Sections 32 and 33 apply exclusively to discharge by reason of illness, incapacity occasioned by injury, or breach of discipline, gross neglect of duty, theft or other misconduct. Section 3 of the same act provides as follows:

"The master may be dismissed at any time by the owner. If he is dismissed before the expiration of the period of service and such dismissal is not warranted according to section 4 or section 5, he shall be entitled to wages for three months after leaving."

Sections 4 and 5 deal exclusively with cases where the master is dismissed on account of illness or incapacity due to injury, or on account of incompetence, dishonesty, or gross fault or negligence while in the service of the ship.

The Maritime Law of Norway of July 20, 1893, chapter 11, section 268, makes the following provision:

"A maritime lien upon the ship and freight shall attach to the following claims; the claims of the master and crew for wages and for remuneration to which they are lawfully entitled for services on board the ship."

[2] It is conceded that in no case was the employment of any of the crew terminated for one of the excepted clauses, but was brought about in each case by the seizure of the ship.

The main question involved is whether such circumstance amounts to a dismissal within the meaning of the laws of Norway. No interpretation by the Norwegian courts has been furnished. The statutes may therefore be given such interpretation as would be given under like circumstances to laws of the United States, for, as was said in the case of The Hoxie (C. C. A.) 297 F. 189: "There is no presumption that the law of foreign countries is unlike ours. One who would rely upon the difference * * * must prove its existence. If he does not, we apply our own law to the case."

The failure of the owners of a vessel to pay claims against her when seized upon legal process followed by sale of the vessel, and the termination of the employment of the crew consequent upon such proceedings, have been held to constitute a termination of the shipping agreement, under section 4529 of the Revised Statutes (Comp. St. § 8320), which provides that a master or owner shall pay every seaman his wages within a certain period after termination of the agreement under which he was shipped, and also provides that a master or owner, who refuses or neglects to make payment in the manner provided, "without sufficient cause, shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages." The circumstance that the owner is in financial difficulties does not relieve him from the obligation with respect to claims for wages, including extra pay.

[3] The general rule that the rights of other creditors are subordinate to the claims for wages is applicable, since the rights of seamen have always been cautiously guarded by statutes, and the courts should make their decrees in accord with the spirit and intent of the law to protect the seamen. Gerber v. Spencer (C. C. A.) 278 F. 886. A similar decision was rendered in the case of The Great Canton (D. C.) 299 F. 953, wherein seamen were permitted to recover an extra month's wages under R. S. § 4527 (Comp. St. § 8318), for an improper discharge, and were allowed a prior maritime lien. Section 4527 provides that any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part, and without his consent, shall be entitled to receive in addition to earned wages, a sum equal to one month's wages as compensation. See, also, Covert v. Wexford (D. C.) 3 F. 577; The Adolph (D. C.) 7 F. 501.

It follows from these authorities that the officers and crew of the Fort Gaines were dismissed and became entitled to extra pay as provided by the Norwegian statutes. Moreover, such extra pay may fairly be described as remuneration to which they are lawfully entitled for services on board the ship under the provisions of the Norwegian Act of July 20, 1893. This conclusion is supported by the decision in Gerber v. Spencer, supra, wherein it is held that the extra pay provided for seamen under R. S. § 4529, is made by way of compensation for delay, and is an incident to the claim of wages proper. Again it has been held in Buckley v. Oceanic S. S. Co. (C. C. A.) 5 F.(2d) 545, that the double wages provided by R. S. § 4529, are to be considered as wages rather than as a penalty. The rights of the officers and crew in this case to extra pay therefore give rise to a lien upon the ship, and such a lien must be held to be prior to the claims of other creditors in accordance with the general rule applicable in the courts of the United States.

[4] The officers and crew are claiming not only for the extra compensation referred to, but also for services rendered the vessel and for subsistence during various periods subsequent to the seizure by the United States marshal on October 5th. There is nothing in the stipulations on which the case is submitted to indicate that the services were necessary to the ship after its seizure under the order of this court. Under these circumstances, there is no maritime lien in favor of the crew of the vessel for the services and subsistence in question. The Astoria (C. C. A.) 281 F. 618. If the legal proceedings are to be held as equivalent to a dismissal of the crew, it is fair to assume that dismissal was effective when the custody of the vessel was taken away from the master and passed to the official of the court. The decree will allow to the officers and members of the crew the extra wages provided by the Norwegian law, but the claims for subsistence and services rendered after the seizure of the vessel will be dismissed.

The decision upon the libel of the master will be withheld until it is shown by stipulation or by evidence what supplies and materials were furnished to the ship by the other libelants, and whether the supplies and materials were furnished on the order of the master.