Anne Jane RIFFE, as next friend of Robert Gale Riffe, and Anne Jane Riffe, Individually, Plaintiffs,

v.

Harumi MAGUSHI, a.k.a. Harumi Nagaishi, Defendant/Cross–Claim Defendant,

and

Naomi HAIGASHI, a.k.a. Naomi Higashi, Defendant/Crossclaimant/Third–Party Plaintiff,

v.

CIGNA WORLDWIDE INSURANCE COMPANY, et al., Third–Party Defendants,

and

Anne Jane RIFFE, as next friend of Robert Gale Riffe, and Anne Jane Riffe, Individually, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. 3:92–0531.

United States District Court, S.D. West Virginia, Huntington Division.

July 8, 1994.

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, WV, Richard W. Martin, David Justice, Martin, Picklesimer, Justice and Vincent, Ashland, KY, for Anne Jane Riffe.

Edward M. Kowal, Jr., Charles F. Bagley, III, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, WV, for Harumi Magushi.

D.C. Offutt, Jr., Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, for Naomi Haigashi.

James D. Lamp, Lamp, O'Dell, Bartram & Enstminger, Huntington, WV, for General Motors Corp.

Michael Bonasso, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Cigna Ins. Co.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, WV, for Budget Rent a Car Co.

W.T. Shaffer, Jackson & Kelly, Charleston, WV, for American Express Co., American Express Travel Related Services Co., Inc., Amex Assurance Co.

Martin R. Smith, Jr., Cynthia R. Cokeley, Steptoe & Johnson, Charleston, WV, for AIU Ins. Co.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the motions for summary judgment filed by Third–Party Defendants AIU Insurance Company ("AIU") and CIGNA Insurance Company ("CIGNA") and several American Express affiliated companies

("AMEX"); a cross-motion for summary judgment has been filed by Third–Party Plaintiff Naomi Higashi. Each motion asserts no issue of material fact exists surrounding the terms and conditions of various insurance contracts issued by the Third–Party Defendants to the Third–Party Plaintiffs.[1] Higashi and Harumi Nagaishi are co-defendants in the underlying action and assert the Third–Party Defendants owe them duties to defend and indemnify under the terms of the various insurance policies.

## I.

### CHOICE OF LAW

The Third–Party Defendants assert Japanese law governs the interpretation of the insurance contracts. Both insurance contracts contain the following provision: "[m]atters not provided under this policy shall be governed by the laws and ordinances of Japan." AIU's motion for summary judgment, Exhibit B at 15; CIGNA's motion for summary judgment, Exhibit 1(3) at 8. Third–Party Defendants assert the choice of law provisions in the insurance contracts mandate Japanese law be applied to interpret the contracts. Third–Party Plaintiffs contend West Virginia law applies.

Where a conflict of laws question arises, the conflict of laws doctrine of the forum state are used to determine what law applies. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477, 1480 (1941). Under West Virginia law, a "choice of laws" provision in a contract is valid unless it falls into one of the exceptions outlined in *Syllabus* Point 1, *General Electric Company v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289 (1981):

> "A choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of the law would offend the public policy of this state."[2]

The insurance contracts were created in Japan between citizens of Japan. Thus, the choice of law provision in the contract bears substantial relationship with Japan, the jurisdiction whose laws the parties have chosen to govern the agreements. The Third–Party Plaintiffs have not asserted any public policy reasons why the choice of laws provision should not be given effect. Therefore, it appears this Court must apply the laws of Japan to any interpretation of the policies.

1. The standard used to determine whether a motion for summary judgment should be granted or denied was stated recently by our Court of Appeals:

> "A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979).
>
> "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255 [106 S.Ct. at 2513]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied* [498 U.S. 1109], 111 S.Ct. 1018 [112 L.Ed.2d 1100]

(1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. A mere scintilla of evidence supporting the case is insufficient. *Id.*" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *petition for cert. filed*, 62 USLW 3827 (1994).
*Accord Cornell v. General Electric Plastics*, 853 F.Supp. 221, 225 (S.D.W.Va.1994) (Haden, C.J.); *Thomas v. Shoney's Inc.*, 845 F.Supp. 388, 389–90 (S.D.W.Va.1994) (Haden C.J.).

2. Where no "choice of laws" provision is found in the contract, the general rule is as follows:

> " 'The law of the state in which the contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state.' *Michigan National Bank v. Mattingly*, [158] W.Va. [621], 212 S.E.2d 754 (1975)." *Syllabus* Point 2, *General Elec. Co. v. Keyser, supra.*

For obvious reasons, the application of foreign law presents special problems for courts of justice. Not the least among these is the difficulty in obtaining legal materials from which foreign law may be applied. Application of foreign law is governed by *Rule 44.1* of the *Federal Rules of Civil Procedure*, which states:

"A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. *The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.* The court's determination shall be treated as a ruling on a question of law." (emphasis added).

■■■ Federal courts are given great discretion in choosing source materials when application of foreign law is necessary. *Argyll Shipping Co. v. Hanover Ins. Co.*, 297 F.Supp. 125, 128 (S.D.N.Y.1968) ("A federal court is given great leeway in determination and application of foreign law."). Moreover, where the parties have not shown the applicable foreign law is different from the law of the forum state, the law of the forum state is applied. *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647 n. 1 (9th Cir.1981) ("Absent a showing to the contrary, it is presumed that foreign law is the same as the law of the forum." *Citing 1700 Ocean Ave. Corp. v. GBR Associates*, 354 F.2d 993, 994 (9th Cir.1966); *San Rafael Compania Naviera, S.A. v. American Smelting & Refining Co.*, 327 F.2d 581, 587 (9th Cir.1964)). *See, e.g., The Arizpa*, 63 F.2d 42, 43 (4th Cir.), *cert. denied, U.S. v. Consolidated Coal Co.*, 290 U.S. 648, 54 S.Ct. 66, 78 L.Ed. 562 (1933); *Heredia v. Davies*, 12 F.2d 500, 501 (4th Cir.1926) ("[I]n absence of proof to the contrary, the presumption is that the law of [the foreign country] is the same as the law of this country, the *lex fori.*"); *In re Charter Co.*, 93 B.R. 286, 289 (Bankr.M.D.Fla.1988) ("[T]he parties were required to present sufficient proof to establish the principles of foreign law which they contend are applicable. Otherwise it is to be presumed that the law of the foreign state is the same as that of the present forum."), *citing Symonette Ship-yards Ltd. v. Clark*, 365 F.2d 464 (5th Cir. 1966), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); *Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Bostram*, 347 F.2d 168 (5th Cir.1965); *Todd Shipyards Corp. v. The City of Athens*, 83 F.Supp. 67, 83 (D.Md.1949).

■■■ Where foreign law is applicable, the parties have the burden of sufficiently proving foreign law in such a way that the court may apply it to the facts of the case. *The Fort Gaines*, 18 F.2d 413, 414 (D.Md.1927) ("There is no presumption that the law of foreign countries is unlike ours. One who would rely upon the difference * * * must prove its existence. If he does not, we apply our own law to the case.'" *Citing The Hoxie*, 297 F. 189 (C.C.A. 4), *cert. denied, American Exp Co, Aktieselskab v. U.S.*, 266 U.S. 608, 45 S.Ct. 91, 69 L.Ed. 465 (1924)). *See also Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1361 (D.Del. 1993), *citing Cunningham v. Quaker Oats Co.*, 107 F.R.D. 66, 77 (W.D.N.Y.1985). The Court is under no obligation to undertake research of foreign law, although it may resort to any helpful source. *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 205 (1st Cir. 1988); *Pfizer Inc. v. Elan Pharmaceutical Research Corp., supra*, 812 F.Supp. at 1361; *Fabrica De Tejidos La Bellota S.A. v. M/V MAR*, 799 F.Supp. 546, 561 (D.V.I.1992). Where foreign law is not sufficiently established, the court will apply the law of the forum state. *Banco de Credito Industrial v. Tesoreria General de la Seguridad Social de Espana*, 990 F.2d 827, 836 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 877, 127 L.Ed.2d 73 (1994) ("When the parties have failed to establish foreign law, a court is entitled to look to its own forum's law in order to fill in any gaps." *Citing Cantieri Navali Riuniti v. M/V SKYPTRON*, 802 F.2d 160 (5th Cir.1986)). As was stated in *Pfizer Inc. v. Elan Pharmaceutical Research Corp., supra*, 812 F.Supp. at 1360–61:

"The Court is free to disregard [expert affidavits] under Rule 44.1. *See, e.g., Chantier Naval Voisin v. M/Y Daybreak*, 677 F.Supp. 1563, 1567 (S.D.Fla.1988) (court not bound by evidence submitted by

party's expert on foreign law). *See also Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006–07 (5th Cir. 1990) (party obligated to present to the district court proof of relevant foreign law). * * * Under Rule 44.1, a court is not required to engage in its own research and has the right to insist that the proponent of the foreign law present evidence on the question. *See Cunningham v. Quaker Oats Co.*, 107 F.R.D. 66, 77 (W.D.N.Y. 1985). According to commentators, '[i]n many instances the [court] will not utilize the prerogatives found in the second sentence of Rule 44.1 [stated above].' 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444, at 408 (1971). Nothing in Rule 44.1 requires a court to engage in private research; the rule preserves the court's right to insist upon a complete presentation by counsel on the foreign law issue."

*Citing Commercial Ins. Co. of Newark, N.J. v. Pacific–Peru Const. Corp.*, 558 F.2d 948, 952 (9th Cir.1977). *See generally*, 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2447 (1971 & Supp. 1994). The court may insist upon a complete presentation of foreign law, one that sufficiently establishes the relevant foreign law to be applied.

In the instant case both Third–Party Defendants have submitted affidavits to support their contentions that application of Japanese law would result in summary judgment in their favor. AIU has submitted two affidavits from Japanese lawyer Masayoshi Taniguchi. CIGNA has submitted the affidavit of Kenzaburo Naito, claims manager for CIGNA Insurance Company of Japan. However, the submitted affidavits state conclusory opinions of Japanese law; they do not present Japanese law in a way this court comfortably could apply it to this litigation. The Court notes although Mr. Taniguchi's second affidavit states general propositions of Japanese contract law, those general propositions are wholly insufficient to aid this Court in applying Japanese law to this case.

Because the presentation of relevant Japanese law is insufficiently precise for application to the issues in this case, and because

West Virginia is the forum state, the Court chooses to apply West Virginia law to the contested issues. *Banco de Credito Industrial v. Tesoreria General de la Seguridad Social de Espana, supra*, 990 F.2d at 836; *Pfizer Inc. v. Elan Pharmaceutical Research Corp., supra*, 812 F.Supp. at 1360–61.

## II.

## APPLICATION OF WEST VIRGINIA LAW

### A.

### NAGAISHI v. AIU

■ In the underlying action Harumi Nagaishi was the driver of the vehicle that collided with the vehicle of the plaintiffs. When Nagaishi was sued by the underlying plaintiffs, she sought coverage, defense and indemnification from Third–Party Defendant AIU. Nagaishi, a Japanese citizen, purchased overseas travel insurance from AIU prior to arriving in the United States for a course of study. AIU denies the overseas travel insurance provides coverage under the facts of this case and therefore refuses to defend or indemnify Nagaishi.

Nagaishi argues the overseas travel insurance contract is ambiguous in regard to coverage for automobile accident liability. She contends because the policy is ambiguous, it must be construed against the insurer. Conversely, the insurer, AIU, argues the policy unambiguously precludes coverage.

In West Virginia, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." *Syllabus* Point 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). " 'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given the plain meaning intended.' Syl. pt. 1, *Christopher v. United States Life Ins.*, 145 W.Va. 707, 116 S.E.2d 864 (1960)." *Syllabus* Point 3, *Soliva v. Shand, Morahan & Co., Inc., supra*. However, " '[w]henever the language of an insurance policy provision is reasonably susceptible to two different meanings or is of such doubtful meaning that reasonable minds

might be uncertain or disagree as to its meaning, it is ambiguous.' Syl. pt. 1, *Prete v. Merchants Property Ins.*, 159 W.Va. 508, 223 S.E.2d 441 (1976)." *Syllabus* Point 2, *Soliva v. Shand, Morahan & Co., Inc., supra.* " 'In ascertaining the intention of the parties to an insurance contract, the test is what a reasonable person in the insured's position would have understood the words of the policy to mean.' *Thompson v. State Automobile Mut. Ins.*, 122 W.Va. 551, 554, 11 S.E.2d 849, 850 (1940)." *Syllabus* Point 4, *Soliva v. Shand, Morahan & Co., Inc., supra.* "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Syllabus* Point 8, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

AIU advances two major arguments: (1) because Nagaishi did not select optional additional liability coverage that would have covered the underlying action, the policy should not be construed to allow such coverage; and (2) the policy unambiguously allows coverage only for injuries to the insured, and does not cover injuries to persons other than the insured. For the following reasons, the Court concurs.

From the record supplied by the parties, it is unclear precisely what optional coverage Nagaishi might have purchased, but did not choose at the time she contracted for insurance. The policy appears to cover only bodily injury *to the insured*, Ms. Nagaishi. Section 1, Article 1(1) states, *inter alia*, and under the heading "Payment Responsibilities of AIU," as follows:

"In accordance with the terms set down herein, AIU will pay benefits (death benefits, lasting handicap benefits and/or treatment expense benefits) for bodily injuries *to the insured person* caused by a sudden and accidental incident . . . during a trip . . . from the departure of his/her residence to the return to his/her residence for the purpose of overseas travel as described in the insurance policy." AIU's motion for

summary judgment, Exhibit B. (emphasis added).

Nagaishi argues the exclusion clauses found in Section 1, Article 3(1)<4> and Section 1, Article 4, qualify Section 1, Article 1(1) because they are inconsistent in their terminology. Section 1, Article 3(1)<4> states:

"AIU will not pay benefits for *injuries* that occur as a result of the following: <4> Accidents that occur when the insured person is driving an automobile . . . without proper legal qualifications (under the laws of the place where the driving is done), or is intoxicated, or is under the influence of narcotics, marijuana, opium, stimulants, or thinner and may be incapable of driving normally[.]" AIU's motion for summary judgment, Exhibit B. (emphasis added).

Section 4 states, *inter alia:*

"AIU will not pay benefits *for injuries sustained by the insured person* from accidents[.]" AIU's motion for summary judgment, Exhibit B. (emphasis added).

Nagaishi reasons the two provisions are inconsistent, and create an ambiguity, because the latter refers to injuries "sustained by the insured person" while the former only refers to "injuries." The implication of this reasoning is that the provision must cover injuries to persons other than the insured if it specifically excludes injuries to the insured person in one provision, but more generally excludes only "injuries" in the other.

The Court finds the foregoing argument tenuous. Section 1, Article 1(1) is clear and unambiguous. It covers bodily injury only in regard to the insured person. The choice of terminology in the two exclusions is neither inconsistent nor doubtful. Any reasonable person in Ms. Nagaishi's shoes could read the policy to cover injuries to her only. *See Syllabus* Point 3, *Soliva v. Shand, Morahan & Co., Inc., supra.*

Nonetheless, Nagaishi also contends she is covered by a personal liability policy. AIU contests that assertion claiming Nagaishi neither chose nor purchased such insurance. Nagaishi has produced a certificate of insurance signed by AIU's branch manager in Japan acknowledging "personal liability" cov-

erage. Assuming *arguendo* Nagaishi purchased such coverage, it appears the instant events are not covered under the "personal liability" provisions because they are subject to an exclusion for personal liability resultant from an automobile accident.

Article 3<10> of the "Personal Liability Risk Rider" states as follows:

> "AIU will not pay benefits for damages the insured person suffers from bearing the liability for damages listed below: * * * Liability for damages arising from the possession, use, or administration of . . . vehicles[.]" AIU's reply brief, Exhibit A.

The coverage sought in this case is to indemnify Nagaishi's personal liability arising from her use and possession of a vehicle. Clearly and unambiguously, coverage for her is excluded under the terms of the insurance contract. *Syllabus* Points 1 and 3, *Soliva v. Shand, Morahan & Co., Inc., supra.*

Because the insurance policy is clear and unambiguous in regard to excluding coverage for Nagaishi's liability in the underlying action, AIU's motion for summary judgment is **GRANTED.**

### B.

### HIGASHI v. CIGNA

■ Naomi Higashi was a passenger in the car driven being by Harumi Nagaishi. It collided with the vehicle operated by the plaintiffs in the underlying action. Higashi was responsible for renting the car. She contends CIGNA owes her a duty to defend and indemnify pursuant to overseas accident travel insurance issued to her by CIGNA before she left Japan to study in the United States. CIGNA claims Higashi had the option of choosing automobile liability coverage, but chose not to exercise that option. CIGNA contends the insurance policy clearly and unambiguously excludes coverage for liability arising from the use of a rented vehicle.

The exclusion at issue states, *inter alia:*

> "[CIGNA] shall not be liable for any loss sustained by the insured on account of: * * * liability emanating from the ownership, use or control of . . . vehicle[.]" CIG-

NA's motion for summary judgment, Exhibit A(3) at 18.

It is clear Higashi did not own or control the vehicle driven by Nagaishi. Thus, the exclusion is only operative if Higashi is found to "use" the vehicle under the terms of the exclusion.

The Supreme Court of Appeals of West Virginia recently addressed this issue in a slightly different context in *Johnson v. State Farm Mutual Automobile Insurance Company,* 190 W.Va. 526, 438 S.E.2d 869 (1993). In *Johnson* the court examined a policy provision *granting* coverage where the insured "used" a non-owned vehicle. In *Syllabus* Point 1, the court stated as follows:

> "To invoke coverage under an insurance policy provision which extends coverage for *use* of a nonowned automobile, there must first be established a causal connection between the use of the motor vehicle and the injury." (emphasis added).

*Johnson* makes clear that mere occupancy of a vehicle by a passenger does not constitute "use." However, the court also noted defining the term "use" in regard to automobile passengers requires a factual inquiry into the causal connection between the contribution of the passenger to the accident. Mere occupancy by the passenger will not suffice. *Id.,* 190 W.Va. at 532, 438 S.E.2d at 875.

The Court concludes the cause of action Higashi asserts CIGNA must defend and indemnify her from is one arising from the "use" of a vehicle. Higashi admits she was responsible for renting the automobile. Liability asserted against Higashi by the underlying plaintiffs may be established only if the underlying plaintiffs prove she "used" the vehicle. The allegation of joint enterprise made by the underlying plaintiffs against Higashi clearly is one predicated upon her "use" of the rented vehicle. Because the exclusion for "use" of a vehicle is clear and unambiguous, *Syllabus* Points 1 and 3, *Soliva v. Shand, Morahan & Co., Inc., supra,* the Court concludes the personal liability policy contains an operative exclusion of coverage under the facts of this case. CIGNA's motion for summary judgment is therefore **GRANTED,** and Higashi's motion for summary judgment is **DENIED.**

## III.

### CONCLUSION

Based upon the foregoing, the motions for summary judgment filed by Third–Party Defendants AIU and CIGNA are both **GRANTED**. Third–Party Plaintiff Higashi's motion for summary judgment is **DENIED**. The Court also notes Higashi has no objection to granting the motion for summary judgment filed by AMEX. The motion for summary judgment on behalf of AMEX is therefore **GRANTED**. Finally, the Court notes the motion for summary judgment filed by Third–Party Defendant Budget Rent–A–Car is **MOOT** because the Third–Party Plaintiffs claims have been settled.