**William AMBROSE, Plaintiff,**

v.

**Eugene KNOTTS, individually and in his capacity as Wood County Assessor, Defendant.**

**Civ. A. No. 6:93–1194.**

United States District Court, S.D. West Virginia, Parkersburg Division.

Oct. 17, 1994.

Theodore R. Dues, Jr., Charleston, WV, for plaintiff.

Patrick E. McFarland, Hague & McFarland, Parkersburg, WV, J. Victor Flanagan and Kenneth E. Knopf, Cleek, Pullin, Knopf & Fowler, Charleston, WV, for defendant.

### ORDER

HADEN, Chief Judge:

Pending before the Court is the Defendant's motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. For reasons that follow, Defendant's motion for summary judgment is **GRANTED.**

## I

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The standard used to determine whether a motion for summary judgment should be granted or denied was stated recently by our Court of Appeals:

A moving party is entitled to summary judgment "if the pleading[s], depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied,* —— U.S. —— ——, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994). *Accord Riffe v. Magushi,* 859 F.Supp. 220, 226 (S.D.W.Va.1994); *Cornell v. General Electric Plastics,* 853 F.Supp. 221, 225–26 (S.D.W.Va. 1994); *Thomas v. Shoney's, Inc.,* 845 F.Supp. 388, 389–90 (S.D.W.Va.1994) (Haden, C.J.).

## II

The material facts are undisputed. Plaintiff brought this case in the Circuit Court of Wood County, West Virginia on September 30, 1993, alleging breach of contract, defamation, and a violation of the freedom of speech provided in the First Amendment. The Defendant removed the case to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 over the Plaintiff's claim for the alleged violation of his civil rights under the First Amendment.

The parties entered into a contract on October 13, 1992 in which the Plaintiff agreed to perform certain consulting and support services as an independent contractor for the Wood County Assessor's Office. The contract allowed either party to terminate it on thirty days notice. Approximately five months after the agreement was signed, the Defendant invoked the thirty day termination clause to end the contract. The Defendant's decision to terminate the agreement came one day after the Plaintiff had circulated a petition among the Defendant's employees seeking support to prohibit smoking in the Assessor's Office.

## III

This case presents the Court with a question of first impression in this District and Circuit: whether to extend the free speech protection granted to public employees in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), to independent contractors working for a local government.

Free speech protection for government employees' political beliefs originated in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In *Elrod,* a plurality of the Supreme Court held that "a nonpolicymaking, nonconfidential government employee [cannot] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring). The Supreme Court further clarified its holding in *Elrod* in

*Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), stating

> there is no requirement that dismissed employees prove that they, or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance. To prevail in this type of an action, it was sufficient, as *Elrod* holds, for respondents to prove that they were discharged 'solely for the reason that they were not affiliated with or sponsored by the Democratic Party.' 427 U.S., at 350, 96 S.Ct., at 2678.

*Id.* 445 U.S. at 517, 100 S.Ct. at 1294.

In *Connick v. Myers,* the Supreme Court expanded the protection granted public employees' political beliefs into other areas involving the freedom of expression. The Court expanded the protection of public employees to include occasions when they are speaking on issues of public concern. However, the Court excluded a public employee's comments on matters of personal interest within the scope of her employment, stating "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690.

The Court recently reaffirmed its holding in *Connick* in *Waters v. Churchill,* — U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), holding for an employee's speech "[t]o be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick, supra,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Ed. of Township High School Dist.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968)." *Waters,* — U.S. at ——, 114 S.Ct. at 1884.

By their terminology, the holdings in *Elrod, Branti, Connick,* and *Waters* protect public employees; they do not appear to invite extension to others who enjoy different and more attenuated employment relationships with a public entity. To determine whether to expand upon these holdings and apply their reasoning and protection to an independent contractor allegedly fired for circulating an anti-smoking petition, this Court looked to the cases arising from *Elrod* and *Branti* and whether the Circuits had expanded the holdings of those decisions to include independent contractors.

In *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984), the Seventh Circuit declined to extend the *Elrod–Branti* protection for public employees from political dismissal to an independent contractor. The Court distinguished between independent contractors and public employees and noted "[s]ome day the Supreme Court may extend the principle of its public-employee cases to contractors. But there are enough differences in the strength of the competing interests in the two classes of cases to persuade us not to attempt to do so." 712 F.2d at 295.

In its refusal to extend *Elrod–Branti* protection to independent contractors the *LaFalce* Court also observed:

> Although some business firms sell just to government, most government contractors also have private customers. If the contractor does not get the particular government contract on which he bids, because he is on the outs with the incumbent and the state does not have laws requiring the award of the contract to the low bidder (or the laws are not enforced), it is not the end of the world for him; there are other government entities to bid to, and private ones as well. It is not like losing your job.... An independent contractor would tend we imagine to feel a somewhat lesser sense of dependency.

*Id.* at 294. The Court also discussed the practical consideration of not opening the federal courts to a barrage of cases based on the rejected bids of independent contractors: "[A] decision upholding a First Amendment right to have one's bid considered without regard to political considerations would invite every disappointed bidder for a public con-

tract to bring a federal suit against the government purchaser." *Id.*

The Third Circuit, sitting en banc, also distinguished between independent contractors and public employees in applying *Elrod–Branti:* "the independent contractors in this case differ in significant respects from public employees and ... the distinctions lead to different first amendment treatment of the two classifications." *Horn v. Kean,* 796 F.2d 668, 677 (3rd Cir.1986). The Court declined to extend *Elrod–Branti* protection to independent contractors working for the government because the Court was "convinced that both Justice Brennan in *Elrod* and the Court, speaking through Justice Stevens in *Branti,* understood that the term 'public employee' denoted a discrete class of workers with certain common characteristics. We believe that it is beyond doubt that the teachings of these cases did not encompass all individuals who perform compensated work for a governmental entity." *Id.* at 674.

Similar reasoning to *LaFalce* and *Horn* has also been applied in other Circuits. The Eighth Circuit was unwilling "to extend the patronage decisions to cases which do not involve public employees." *Sweeney v. Bond,* 669 F.2d 542, 545 (8th Cir.1982), *cert. denied sub nom., Schenberg v. Bond,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). The Sixth Circuit, in a case concerning qualified immunity, held no extension of the *Elrod–Branti* decisions to independent contractors had been "'clearly established' in 1983." *Lundblad v. Celeste,* 874 F.2d 1097, 1102 (6th Cir.1989), *reh.,* 924 F.2d 627 (6th Cir.1991), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991). For other decisions refusing to extend *Elrod–Branti* protection to independent contractors *see Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710 (7th Cir.1991) ("All circuits considering the question of whether to extend the holdings of *Elrod* and *Branti* to independent contractors have declined."), *cert. denied,* — U.S. ——, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991); *Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990); *Fox & Co. v. Schoemehl,* 671 F.2d 303 (8th Cir.1982).

This Court is convinced that the reasoning of those courts controls the case at hand. *Connick v. Myers* creates a very limited, specific, free-speech protection for public employees. It did not create a general protection resident in the population as a whole. This Court concludes that it should follow the reasoning of all Circuits that have analyzed the application of *Elrod–Branti* to independent contractors and, therefore, should not extend the free speech protection granted public employees in *Connick v. Myers* to the Plaintiff, an independent contractor. The Plaintiff has not stated a federal cause of action.

### IV

The Defendant's motion for summary judgment is **GRANTED.** The Plaintiff failed to state a federal cause of action. The protection granted public employees in *Connick v. Myers* does not extend to independent contractors. This Plaintiff's civil rights claim under the First Amendment is **DISMISSED** and the state causes of action are **REMANDED** to the Circuit Court of Wood County, West Virginia.